**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 01-50022
_____


UNITED STATES of AMERICA,

Plaintiff-Appellee,

versus

JUAN NOLASCO-ROSAS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Western District of Texas
_____

March 20, 2002

Before JONES, WIENER, and PARKER, Circuit Judges.

PER CURIAM:

Defendant-Appellant Nolasco-Rosas ("Nolasco") was indicted for transporting undocumented aliens within the United States for the purpose of commercial advantage and private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (B)(I). He was tried by a jury and convicted of aiding and abetting, and was sentenced to thirty-three months of imprisonment. He challenges the sufficiency of the evidence supporting his conviction. Finding no reversible error in Nolasco's conviction or his sentencing, we affirm.

## I. FACTS AND PROCEEDINGS

Border Patrol Officer Jeff Sagemuehl was driving to work one evening when he spotted some modified vans[1] and other vehicles driving slowly and in close proximity to each other. Traveling on a farm-to-market road, the vehicles were in an area commonly used as a pick-up point for illegal aliens. The officer notified the border patrol office of his sighting and described one of the vehicles traveling with the vans as a custom-painted, red and white striped, Chevrolet pickup truck (the "pickup"). Although his recollection was in dispute at trial, Sagemuehl testified that the vans and pickup exhibited uncommon and suspicious driving behavior, especially given the particular rural road (FM 481) on which they were traveling. At trial, he identified a photograph of the pickup as the one that he had seen on the night in question.

At about the time that Officer Sagejmuehl reported his sighting, Border Patrol Officers Myers and Medica, patrolling in separate cars, received a call from their dispatcher informing them that five vans, a pickup truck, and a Ford Crown Victoria were traveling together on FM 481. Myers and Medica each stationed his patrol car on FM 481 and observed the traffic. Eventually, they spotted a red and white pickup truck, two vans, and a Ford Crown Victoria being driven closely together. In their respective patrol

---

[1] The vans were "riding high in the back," indicating that they were modified to accommodate greater cargo (including passengers) weight in the back.

cars, Myers and Medica attempted to stop the vehicles. Medica pulled up behind one of the vans and was able to stop it. Inside the van, Medica found approximately 20 occupants who told the officer that they were illegally in the United States. The van contained a CB radio tuned to Channel 35.

Myers pulled up behind another vehicle, at which point the Crown Victoria rapidly drove away. Believing that illegal aliens were likely to be found in the vans, Myers elected not to follow the Crown Victoria, staying near the van instead. At this point, Myers's patrol car was behind the van but in front of the pickup. He turned on his police lights in an effort to get the van to pull over, but it continued on; and as the cars approached a curve, the pickup passed Myers's car and slammed on its brakes, cutting off Myers. After braking to avoid an accident, Myers attempted to move into the opposite lane, but was again cut off by the pickup. This process of attempted passes by Myers thwarted by cut offs by the pickup ended with Myers driving his patrol car into a road-side ditch.

By the time that Myers pulled back on to the road, the pickup had sped away. Myers notified the border patrol office of the situation and proceeded along the road. A few moments later, Myers spotted the van that he had attempted to apprehend stopped on the road. The van was unoccupied, but Myers observed many sets of footprints and several bags of clothes, food, and water, inside the van. Like the one stopped earlier by Medica, this van also

3

contained a CB radio tuned to Channel 35.

Knowing that Myers's patrol car had been run off the road, Medica radioed Officer Blaylock, a local police officer, for help. Medica described the pickup and the other vehicles to Blaylock who stationed his car on FM 481 and soon saw a red and white pickup truck pass with its lights off. Blaylock pursued the pickup, and with the help of other officers and their cars, was able to bring it to a halt by blocking its path. When Blaylock got out of his vehicle and walked in front of the pickup, its driver (who turned out to be Nolasco) began driving forward, toward Blaylock. The officers drew their weapons and ordered Nolasco to put his hands up. When Nolasco failed to comply and resisted arrest, he was forcibly removed from the pickup, which was found to contain a scanner and a CB radio tuned to Channel 35.

Nolasco was charged with two counts of transporting illegal aliens[2] and one count of assaulting, resisting, or impeding a federal officer.[3] He was tried before a jury, and after each side had rested, Nolasco moved for a judgment of acquittal, which was denied by the district court. The jury convicted Nolasco on all three counts. In addition, the jury answered a special

---

[2]   One count for each of the illegal aliens who were the government's material witnesses: Count One for Arnaldo Flores-Ochoa ("Flores"); Count Two for Jesus Erubial Morales-Chavira ("Morales").

[3]   Nolasco does not appeal his conviction on this count.

interrogatory, finding that the government had proved beyond a reasonable doubt that Nolasco had transported illegal aliens for "commercial advantage or private financial gain." The district court sentenced Nolasco to three concurrent prison terms of 33-months each, to be followed by two concurrent three-year supervised release terms for the transportation counts and a concurrent one-year supervised release term for the assault count. Nolasco timely appealed.

## II. ANALYSIS

### A. Standard of Review

Nolasco challenges the sufficiency of the evidence used to support his conviction for illegally transporting aliens and the jury's finding that he did so for commercial advantage and financial gain. The standard for evaluating the sufficiency of evidence is whether a rational jury, viewing the evidence in the light most favorable to the government, could have found the essential elements of the offense beyond a reasonable doubt.[4] In evaluating a sufficiency of the evidence claim, this court must draw all reasonable inferences in support of the verdict.[5] We do not consider whether the jury correctly determined innocence or

---

[4] United States v. Ortega Reyna, 148 F.3d 540, 543 (5th Cir. 1998).

[5] Id.

5

guilt, but whether the jury made a rational decision.[6]

## B.  <u>Transporting Illegal Aliens</u>

The evidence is sufficient to affirm Nolasco's transportation convictions under § 1324(a)(1)(A)(ii).  To convict Nolasco on this count, the jury had to find beyond a reasonable doubt that (1) an alien entered or remained in the United States in violation of the law, (2) Nolasco transported the alien within the United States with intent to further the alien's unlawful presence, and (3) Nolasco knew or recklessly disregarded the fact that the alien was in the country in violation of the law.[7]

The testimony and evidence presented at trial are more than adequate to support Nolasco's conviction for aiding and abetting the transportation of aliens by others.  The government's material witnesses, Flores and Morales, admitted to entering the country illegally and journeying to cities within the United States.  Although neither witness knew or saw Nolasco before they and others were brought to the border patrol station on the night of their apprehension, both testified that they saw the red and white pickup before they entered the vans in which they were transported.  All border patrol agents involved in the apprehension described a red

---

[6]  <u>United States v. Jaramillo</u>, 42 F.3d 920, 923 (5th Cir. 1995).

[7]  8 U.S.C. § 1324(a)(1)(A)(ii); <u>United States v. Diaz</u>, 936, F.2d 786, 788 (5th Cir. 1991).

and white Chevrolet pickup being driven in close proximity to some of the modified vans. Officer Blaylock stopped Nolasco in a truck matching the description of the pickup that Officers Sagemeuhl, Medica, and Myers had seen and followed. The CB radio found in Nolasco's truck was tuned to the same frequency as the CB radios found in the two vans stopped by Medica and Myers. Finally, when Officer Blaylock crossed in front of Nolasco's pickup on foot after stopping it, Nolasco drove his vehicle toward the officer, then resisted arrest by fighting with the officers as they removed him from the pickup. From this evidence, a rational jury could conclude beyond a reasonable doubt that Nolasco knowingly aided and abetted the transportation of illegal aliens.

## C. **Financial Gain**

Although Nolasco was indicted for transporting undocumented aliens for financial gain, he was tried entirely for aiding and abetting. Nevertheless, the government sought and obtained a special jury interrogatory on financial gain. The jury found Nolasco guilty only of aiding and abetting the illegal transportation of aliens, but answered the interrogatory on financial gain in the affirmative. This combination of trying and convicting Nolasco for aiding and abetting and putting the financial gain issue before the jury produced an aberration that we are constrained to correct lest the same mistake be repeated in future prosecutions of this nature.

7

As the government prosecuted Nolasco under an aiding and abetting theory only, the financial gain component of § 1324(a)(1) is wholly inapplicable; and the government so conceded at oral argument. United States v. Angwin,[8] a Ninth Circuit case addressing a related issue, supports the proposition that if the defendant is prosecuted under § 1324(a)(1)(A) and is convicted of no more than aiding and abetting the transportation of illegal aliens, it makes absolutely no difference whether the transportation was undertaken for financial gain:

> Absent subsection (a)(1)(A)(v)(II), Title 18 would operate to impose on an aider and abettor a ten-year maximum term — the same term a principal would receive — for aiding and abetting those offenses [described in (A)(i)-(iv)]. Given the aiding and abetting provision in subsection (a)(1)(A)(v)(II) and the penalty provisions in subsection (a)(I)(B), however, a defendant who aids or abets a violation of those provisions is only subject to a five-year maximum term, even if the defendant aided and abetted a violation for commercial gain.[9]

Angwin suggests that §§ 1324(a)(1)(A) and (B) are constructed to carve out an exception for defendants convicted of aiding and abetting the crimes delineated in 1324(a)(1)(A)(i)-(iv). The effect of the exception is that, unlike the sentencing process for a defendant convicted as a principal or as part of a conspiracy, the sentencing of a defendant convicted of aiding and abetting in the transportaion of illegal aliens is entirely unaffected by the

---

[8]  271 F.3d 786 (9th Cir. 2001).

[9]  Id. at 802 (emphasis added).

8

element of financial gain.  The statutory maximum for aiding and abetting the transportation of illegal aliens is 5 years, regardless of whether or not the underlying crime was committed for financial gain.[10]

It is obvious that (1) at trial, (2) during closing arguments, (3) in conversations with the district court, and (4) in the jury instructions, the government was not arguing that Nolasco was a principal.  Rather, the government consistently took the position that Nolasco aided and abetted other individuals who were actually transporting the illegal aliens.  The evidence adduced at trial shows that Nolasco was associated with the persons transporting the aliens, that he escorted the vans containing illegal aliens, and that he interfered with officers attempting to apprehend the vehicles that were transporting the illegal aliens.  The evidence does not show that Nolasco actually transported aliens or that he was paid or expected to be paid for his services.

Section 1324(a)(1)(A)(v)(II) expressly provides that aiding and abetting the commission of § 1324(a)(1)(A)(ii) is a separate, free-standing offense.  The government, however, did not include mention of 1324(a)(1)(A)(v)(II) in the verdict form or in its

---

[10]   Id. at 803 ("Instead, the addition of the aiding and abetting provision in subsection (a)(1)(A)(v)(II) and the corresponding adjustments to the penalty provisions in subsection (a)(1)(B) operate to impose lesser penalties for aiders and abettors of certain offenses than they would normally receive under Title 18.")

appellate brief.  Had the government included 1324(a)(1)(A)(v)(II) in its documentation, there would have been no doubt that, pursuant to 1324(a)(1)(B)(i) and (ii), the statutory maximum for aiding and abetting —— Nolasco's crime of conviction —— was 5 years <u>and</u> that under no circumstances could it be increased to ten years for financial gain.[11]  But, despite the fact that the evidence adduced at trial was sufficient to show only that Nolasco was an aider and abettor, the government's misguided request for a financial gain interrogatory induced the court to give one.

The government's error in pursuing the financial gain component of the crime and the court's error in submitting an interrogatory on that irrelevant point, in Nolasco's case, is nevertheless harmless.  With or without the financial gain component, Nolasco's maximum statutory sentence was five years. Even if the jury concluded correctly that the crime that Nolasco aided and abetted was committed for financial gain, thereby making the actual perpetrators subject to a statutory maximum sentence of ten years, it could not have caused Nolasco to receive more than five years as an aider and abettor.  Regardless, the district court sentenced Nolasco to but 33 months of imprisonment, still less than the correct maximum of five years, not to mention the incorrect maximum of ten years.  Therefore, Nolasco's right to receive a

_____

[11]   <u>See</u> <u>id.</u> at 800-03 and discussion <u>supra</u>.

prison term of no more than five years was not affected by any error that may have occurred as a result of causing the jury to consider financial gain.

Our belabored point, which by now should be obvious, is that when a defendant is tried and convicted only for aiding and abetting in the transportation of undocumented aliens, the question of financial gain — whether by the defendant or others — is immaterial and should not be introduced into the picture lest it cause confusion.

## III. CONCLUSION

For the foregoing reasons, Nolasco's conviction and his sentence are

AFFIRMED.[12]

---

[12] Judge Jones concurs in the judgment only.