United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 17, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-30555

_____

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

OSIEL HERNANDEZ-ACUNA

Defendant - Appellant

_____

Appeal from the United States District Court
for the Western District of Louisiana
No. 04-50092-02

_____

Before KING, GARWOOD, and JOLLY, Circuit Judges.

PER CURIAM[*]:

Defendant-appellant Osiel Hernandez-Acuna was convicted of

ten counts of transporting illegal aliens under 8 U.S.C.

§ 1324(a)(1)(A)(ii) and one count of conspiracy to transport

illegal aliens for commercial and financial gain in violation of

8 U.S.C. § 1324(a)(1)(A)(v)(I).  He now appeals his conviction,

arguing that the district court erred by (1) admitting the

_____

[*]      Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

-1-

testimony of Agent Jon Stansel, (2) refusing to allow Professor Robert Van Kemper to testify as an expert for the defense, (3) denying his motion for judgment of acquittal, and (4) denying his motion to suppress evidence. For the following reasons, we REVERSE and REMAND.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant-appellant Osiel Hernandez-Acuna ("Hernandez") worked as a relief driver for Enlaces Terrestes de Star de Dallas, a small transportation company located in the Oak Cliff neighborhood of Dallas, Texas. On May 16, 2004, Hernandez was the relief driver riding in the front passenger seat of a van when Officer Earlton Parker of the Greenwood City Police Department stopped the driver, Jose de Jesus Contreras, for speeding.

Officer Parker contacted Immigration and Custom Enforcement ("ICE") officers. Agent Louis Patton of ICE responded to the scene and interviewed the passengers. None of the passengers had any valid U.S. identification such as a driver's license, work permit, visa, or similar documentation, but several had Mexican identification. Agent Patton testified that he and the other ICE agent determined that all of the passengers were illegally in the United States. ICE took into custody all of the passengers, except a juvenile and a pregnant woman. None of the passengers had an alien registration number in the agency database.

Although the passengers were initially held as material witnesses, they were released after the government took their depositions.

When Hernandez was asked if he was in the United States legally, he stated he was "in the process of becoming a resident," but ICE officials determined this statement to be false. Hernandez presented a false resident-alien card to the officers at the scene. Both Hernandez and Contreras were arrested and charged with the transportation of illegal aliens.

Prior to the trial, the government gave notice that it intended to use expert testimony by Agent David O'Neal regarding transportation regulations and Agent Jon Stansel regarding the methods of illegal alien transportation. Hernandez and Contreras filed a motion in limine to preclude the testimony of Agent O'Neal and Agent Stansel as expert witnesses. The district court granted the motion in part and denied it in part. The court permitted O'Neal and Stansel to testify as experts, but it ordered that the experts could not give testimony that would violate Rule 704(b).

The district court denied the motion to suppress evidence obtained during the traffic stop. Hernandez filed a motion to reconsider, arguing that Officer Parker observed the traffic violation while outside his jurisdiction, and the district court denied it as well.

When Contreras did not appear for trial, the district court

severed the case and tried Hernandez individually.  Over an objection by Hernandez, the government's case-in-chief included testimony by Agent Stansel regarding the methods of illegal alien transportation.  To rebut Agent Stansel's testimony, Hernandez offered Professor Robert Van Kemper as an expert in cultural anthropology.  Van Kemper was to testify regarding the use of camioneta vans by Hispanics in both Mexico and the Dallas area. The district court excluded Van Kemper's testimony pursuant to Rule 704(b) and for the further reason that it was not, in the court's view, sufficiently reliable, and Hernandez objected to that ruling.

At the conclusion of the government's case-in-chief, Hernandez moved for a judgment of acquittal which was denied. After a three day trial, a jury found Hernandez guilty of all eleven counts.  The district court sentenced Hernandez to eighteen months imprisonment for each count, with the sentences to be served concurrently.  Hernandez timely appealed.

## II. EXPERT TESTIMONY

### A.    Standard of Review

A district court's decision to admit or exclude evidence is reviewed for abuse of discretion.  United States v. Gutierrez-Farias, 294 F.3d 657, 662 (5th Cir. 2002).  Any error in admitting evidence is subject to harmless error review.  United States v. Williams, 957 F.2d 1238, 1242 (5th Cir. 1992).

-4-

**B.   Agent Stansel's Testimony**

Hernandez was charged with transportation of illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), which prohibits transporting illegal aliens knowing or with a reckless disregard for their immigration status.  Hernandez's challenge to Agent Stansel's testimony revolves around whether Hernandez knew about or recklessly disregarded the passengers' illegal status.  Agent Stansel, a senior special agent with ICE, testified as an expert for the government.  Hernandez argues that the district court erred when it admitted the testimony of Agent Stansel because certain portions of his testimony on Hernandez's mental state came "unacceptably close" to illegal profiling.

The Federal Rules of Evidence set out when a district court may permit expert testimony on a matter in dispute at trial.  If scientific, technical, or specialized knowledge will aid the trier of fact in understanding the evidence or determining a fact in issue, an expert may testify.  FED. R. EVID. 702.  The expert, however, must be qualified by knowledge, skill, experience, training, or education.  Id.  The testimony must be based "upon sufficient facts or data . . . [and] the product of reliable principles and methods."  Id.  Critically for our purposes, an expert in a criminal case may not offer "an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged."  FED.

R. EVID. 704(b).  The defendant's mental state is an issue for the trier of fact alone.  Id.

The district court erred in allowing Agent Stansel to testify to Hernandez's mental state.[1]  A fine "borderline" exists between an improper opinion regarding the defendant's mental state and "a mere explanation of the expert's analysis of facts" relating to the defendant's mental state.  See United States v. Speer, 30 F.3d 605, 610 (5th Cir. 1994).  An expert witness may violate Rule 704(b) by either explicitly offering an opinion as to the defendant's state of mind or by giving the functional equivalent of such a statement.  Id.; Gutierrez-Farias, 294 F.3d at 663.

In Gutierrez-Farias, a Drug Enforcement Agency ("DEA") agent testified as an expert on the business of transporting narcotics through South Texas, and we held that admission of that expert testimony was an abuse of discretion.  See 294 F.3d at 663.  The DEA agent's testimony suggested that, because most drivers know

---

[1]    The parties do not address the required mental state for Hernandez's conspiracy conviction.  At the district court, the jury instruction for the conspiracy count read: "United States Code, Section 1324(a)(1)(A)(I) makes it a crime for anyone to conspire with someone else to transport or attempt to transport an illegal alien within the United States, knowing or in reckless disregard of the fact that the illegal alien is here illegally, and in furtherance of the illegal alien's violation of the law."  Neither party objected to the jury instructions.  Agent Stansel's improperly admitted testimony also affects the conspiracy conviction because the mental state in the jury instruction for conspiracy is the same as the mental state for the transportation of illegal aliens.

-6-

when they are smuggling drugs in their vehicles, Gutierrez must have known he was smuggling drugs.  Id.  "Rather than assisting the jury to understand the evidence presented on complicated fact issues, the agent presented the jury with a generalization that in most drug cases the person hired to transport the drugs knows that the drugs are in the vehicle."  Id.  We held that this generalization was the functional equivalent of an agent's direct comment on the defendant's mental state and thus violated Rule 704(b).  Id.

In United States v. Mendoza-Medina, we held that the admission of similar expert testimony was an abuse of discretion. 346 F.3d 121, 128 (5th Cir. 2003).  In Mendoza-Medina, a DEA agent testified about how people are recruited to transport drugs, the correlation between the amount of drugs in a load and the experience of the transporter, the importance of trust between the distributor and driver, and the practice of narcotic traffickers bringing their wives and children along with the specific intent of masking the drug trafficking offense.  346 F.3d at 127-28.  Because Mendoza-Medina had his wife and child with him at the time of the stop, these generalized comments about distributors having to trust their couriers and the couriers' practice of  bring their families along were effectively used as substantive evidence that Mendoza-Medina also knew he carried drugs.  Id.  We held that use of this testimony was a violation of Rule 704(b) and came "unacceptably close" to

illegal profiling.  See id. at 125.

In this case, Agent Stansel testified that "camioneta" is a Spanish word meaning small bus or van and that law-enforcement officials generally refer to a camioneta operation as a van company that does not comply with regulations and that transports illegal aliens across the United States.  He also noted that smugglers bring illegal aliens directly to the van companies, which then transport the aliens from larger cities, such as Houston and Dallas, to other locations in the United States. According to Agent Stansel, camioneta operations are considered a "front" for alien smuggling operations and do not put signs on their vans to avoid detection.  The camioneta passengers do not volunteer that they are illegal aliens, and the company does not ask questions regarding the passengers' immigration status so that its personnel can say they were unaware of it.  Agent Stansel testified:

> Q. Now, Mr. Gilley was talking to you about, you know, what was required as far as asking for identification or verifying alien status.
>
> A. That's correct.
>
> Q. Based on your understanding of those requirements, can someone just simply turn a blind eye to evidence that would indicate such and just plead ignorance?
>
> A. No, sir.  Then they would be recklessly disregarding the fact that those people might be illegally in the country.
>
> Q. And again, these are not the kind of operations where someone's going to ask or

> someone's going to tell, right?
>
> A. That's correct.
>
> Q. And why is it that this is the practice?
>
> A. It is so that in a situation such as we have today, if you're - -
>
> Q. Well, wait. Let's talk about your experience.
>
> A. Right. In my experience, if they're apprehended, then they can say: 'I didn't know, I didn't talk to any of the people and I didn't know what their immigration status was.'

In Agent Stansel's opinion, border patrol agents watch for camioneta vans because they are "100% illegal" and the facts of this case were consistent with camioneta operations that he had investigated in the past.

Agent Stansel's generalization about the typical camioneta operation--that when the drivers avoid asking for or receiving information from aliens about their immigration status, they recklessly disregard the fact that their passengers may be in the country illegally--is problematic. His testimony is similar to the generalizations regarding the typical drug-smuggling operations in Mendoza-Medina and Gutierrez-Farias. Gutierrez-Farias, 294 F.3d at 663; Mendoza-Medina, 346 F.3d at 127-28. Although Agent Stansel did not expressly say that Hernandez knew or recklessly disregarded his passengers' illegal immigration status, the clear inference was that Hernandez did so because the facts in this case were consistent with the typical camioneta

-9-

operation where, according to Agent Stansel, immigration status is disregarded.  This is the "functional equivalent" of an express comment on Hernandez's mental state.  See Gutierrez-Farias, 294 F.3d at 663.  The district court's admission of this testimony by Agent Stansel was therefore an abuse of discretion.[2]

We do not hold that all of Agent Stansel's testimony was improperly admitted; only that which amounted to a comment on Hernandez's mental state was improper.  If expert testimony would be helpful in assisting the trier of fact in understanding the evidence, background testimony by an expert familiar with the methods of transporting and smuggling illegal aliens is permitted, so long as the testimony does not comment on the defendant's mental state.  See United States v. Washington, 44 F.3d 1271, 1283 (5th Cir. 1995)(holding that an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution evidence).

We must next decide whether the error was harmless.  Even when expert testimony is erroneously admitted, reversal is not

_____

[2]      The government urges us to follow two unpublished opinions from the Ninth Circuit that permit expert testimony in transportation-of-illegal-alien cases.  See United States v. Salazar-Munoz, 242 F.3d 385, 2000 WL 1529233 (9th Cir. 2000) (unpublished table decision); United States v. Vaca-Hernandez, 185 F.3d 871, 1999 WL 451214 (9th Cir. 1999) (unpublished table decision).  Those cases are different from the situation in this case because while the expert testimony was admitted, the agents' comments did not go to the defendants' intent, knowledge, or mental state.  See id.

required if the error is harmless.  Gutierrez-Farias, 294 F.3d at 663.  "[U]nless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required."  Mendoza-Medina, 346 F.3d at 127 (citing Williams, 957 F.2d at 1242).

In both Mendoza-Medina and Gutierrez-Farias, the error was found to be harmless due to the substantial additional evidence provided at trial.  Gutierrez-Farias, 294 F.3d at 663; Mendoza-Medina, 346 F.3d at 127-28.  For example, in Mendoza-Medina the defendant had confessed to smuggling drugs and the confession was corroborated by other evidence.  346 F.3d at 129.  In Gutierrez-Farias, the agent's improper testimony was only a small part of "an otherwise strong case."  294 F.3d at 663.  Further, the district court attempted to cure the defects in the agent's testimony by instructing the jury that it could not rely on the agent's testimony alone as proof of the defendant's mental state. Id.

In this case, however, the circumstantial evidence is not nearly as strong as that in Gutierrez-Farias and Mendoza-Medina. See Gutierrez-Farias, 294 F.3d at 663; Mendoza-Medina, 346 F.3d at 127-28.  There is no direct evidence of Hernandez's knowledge, and apart from Agent Stansel's testimony, the evidence of Hernandez's knowledge of the passengers' immigration status is slim.  Hernandez did not confess to the crime charged, act aggressively toward law enforcement, or appear nervous during the

-11-

stop.  Agent Stansel's testimony served as a crucial part of the evidence presented at trial and provided the "link" that established Enlaces's operations as similar to the typical illegal camioneta operation.  The error in admitting Agent Stansel's testimony is harmful because there is more than a "reasonable possibility that the improperly admitted evidence contributed to the conviction."  Mendoza-Medina, 346 F.3d at 127.

## C.  Professor Van Kemper's Testimony

Hernandez argues that the district court abused its discretion in refusing to admit the testimony of his expert witness, Robert Van Kemper, Professor of Cultural Anthropology at Southern Methodist University.

Hernandez contends that because the evidence of Professor Van Kemper was relevant and necessary to counter Agent Stansel's testimony, it should have been admitted.  The district court's ruling was based on what the court perceived to be a problem with the reliability of Professor Van Kemper's testimony, as well as a problem with Rule 704(b).  The district court may exclude expert testimony if the underlying basis for the expert's opinion is not sufficiently reliable.  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993); FED. R. EVID. 702.  One of the factors the district court is to consider when assessing whether the methodology is scientifically valid or reliable is whether the theory has been subject to peer review and publication.  Moore v.

Ashland Chem. Inc., 151 F.3d 269, 275 (5th Cir. 1998). Professor Van Kemper's testimony relied largely upon one study on camionetas done by a professor in Los Angeles, and the district court expressed doubt as to the reliability of that study because it was not peer reviewed. The court did not abuse its discretion by excluding Professor Van Kemper's testimony as not sufficiently reliable.

With respect to Rule 704(b), the court concluded that Professor Van Kemper was qualified as an anthropologist, but found that Rule 704(b) prohibited his testimony and noted that Professor Van Kemper was in no better position than a juror to conclude whether Hernandez's actions demonstrated knowledge or reckless disregard of the passengers' immigration status. Because the purpose of Professor Van Kemper's testimony was to negate Agent Stansel's testimony and to provide other evidence concerning Hernandez's state of mind, the testimony was rightfully excluded under Rule 704(b). Gutierrez-Farias, 294 F.3d at 663; Mendoza-Medina, 346 F.3d at 127-28.

### III. SUFFICIENCY OF THE EVIDENCE

**A. Standard of Review**

We review a challenge to the sufficiency of the evidence in the light most favorable to the government. United States v. Burton, 324 F.3d 768, 770 (5th Cir. 2003). Hernandez made a Rule 29 motion for judgment of acquittal at the close of the

government's case-in-chief, but because he failed to renew his motion at the close of the evidence, we review his claim to determine "whether there was a manifest miscarriage of justice." Id. (quoting United States v. Galvan, 949 F.2d 777, 783 (5th Cir. 1991)). A manifest miscarriage of justice "occurs only where 'the record is devoid of evidence pointing to guilt or contains evidence on a key element of the offense [that is] so tenuous that a conviction would be shocking.'" United States v. McIntosh, 280 F.3d 479, 483 (5th Cir. 2002) (quoting United States v. Cathey, 259 F.3d 365, 368 (5th Cir. 2001) (internal citations omitted) (alteration in original)). We review the sufficiency of the government's case in light of all the evidence, including the disputed expert testimony. See e.g., United States v. Marshall, 762 F.2d 419, 423 (5th Cir. 1985) (holding defendant not entitled to have the court of appeals disregard inadmissible evidence in conducting sufficiency of evidence review).

## B. Analysis

To convict Hernandez of transporting illegal aliens, the jury had to find beyond a reasonable doubt that (1) an alien entered or remained in the United States in violation of the law, (2) Hernandez transported the alien within the United States with intent to further the alien's unlawful presence, and (3) Hernandez knew or recklessly disregarded the fact that the alien was in the country in violation of the law. 8 U.S.C.

§ 1324(a)(1)(A)(ii); <u>United States v. Nolasco-Rosas</u>, 286 F.3d 762, 765 (5th Cir. 2002).  Because circumstantial evidence is sufficient to establish knowledge of alien status, direct proof of Hernandez's state of mind is unnecessary.  <u>United States v. De Jesus-Batres</u>, 410 F.3d 154, 161 (5th Cir. 2006); <u>United States v. Romero-Cruz</u>, 201 F.3d 374, 379 (5th Cir. 2000).

Hernandez argues that the government failed to introduce sufficient evidence to show he knew or recklessly disregarded that the passengers were illegal aliens.[3]  Hernandez contends without Agent Stansel's testimony the jury could not find that Hernandez recklessly disregarded that his passengers were illegal aliens.  But, Hernandez is not entitled to have Agent Stansel's testimony excluded from the sufficiency of the evidence review, <u>see</u> <u>Marshall</u>, 762 F.2d at 423, and with Agent Stansel's testimony, the evidence is more than sufficient to sustain the conviction.

Even if, for the sake of argument we exclude Agent Stansel's testimony bearing directly on Hernandez's state of mind, the record is not devoid of evidence pointing to Hernandez's guilt, nor is the evidence so tenuous that a conviction would be

---

[3]     Hernandez's brief does not address the sufficiency of the evidence with regard to an element of the conspiracy conviction under 8 U.S.C. 1324(a)(1)(A)(v)(I).  Therefore, we do not discuss the sufficiency of the evidence as to the conspiracy conviction because inadequately briefed issues are deemed abandoned.  <u>Dardar v. LaFourche Realty Co.</u>, 985 F.2d 824, 831 (5th Cir. 1993) (citing <u>Friou v. Phillips Petroleum Co.</u>, 948 F.2d 972, 974 (5th Cir. 1991).

shocking. The remainder of Agent Stansel's testimony, in addition to Officer Parker's and Agent Patton's testimony describing the condition of the van's passengers, suggests that Hernandez may have recklessly disregarded the passengers' illegal status. For instance, the evidence showed: (1) that the passengers had utilized a small transport company operated by and for Spanish-speaking individuals; (2) that the van company allowed payment at the destination rather than requiring payment up front; (3) that all the passengers appeared to be Hispanic; (4) that there was a "strong odor" indicating that some of the passengers had not bathed recently; (5) that the van was crowded; (6) that the passengers' clothing was "dingy"; (7) that they had little luggage in the van, a mere four or five backpacks among twelve passengers each taking a long distance trip; (8) that safety equipment was not in the van; and (9) that the exterior of the van was unmarked.

In sum, Hernandez has not demonstrated that a manifest miscarriage of justice has occurred or that the record is so devoid of evidence that Hernandez recklessly disregarded the passengers' status as to make his conviction shocking. See Burton, 324 F.3d at 770-71; Nolasco-Rosas, 286 F.3d at 765-66.

### IV. MOTION TO SUPPRESS

**A. Standard of Review**

We review the district court's factual findings on a motion to suppress for clear error, and we review de novo its legal findings, including its ultimate conclusion as to the constitutionality of the law enforcement action. United States v. Carreon-Palacio, 267 F.3d 381, 387 (5th Cir. 2001). We view the evidence in the light most favorable to the party that prevailed in the district court. United States v. Jordan, 232 F.3d 447, 448 (5th Cir. 2000).

**B. Analysis**

Hernandez argues that the district court erred in denying his motion to suppress. He contends that Officer Parker exceeded his jurisdiction under state law because the van was not within Officer Parker's jurisdiction when the van was clocked at eighty-one miles per hour in a seventy mile-per-hour zone.

Hernandez recognizes that this issue is controlled by our decision in United States v. Garcia, 719 F.2d 108 (5th Cir. 1983), but he asserts that Garcia was erroneously decided. Hernandez asks the court to reassess its prior rulings in Garcia, and United States v. Jones, 185 F.3d 459 (5th Cir. 1999). We decline to revisit our holdings in Garcia and Jones. The decisions of prior panels are binding on this court. United States v. Martin, 431 F.3d 846, 853 (5th Cir. 2005).

When evidence secured by a state official is used against a defendant accused of a federal offense, the pertinent question is

whether the state official violated the Fourth Amendment in securing the evidence. Issues regarding local law-enforcement jurisdiction do not govern in a federal criminal action. <u>United States v. Walker</u>, 960 F.2d 409, 415 (5th Cir. 1992). The district court, therefore, properly denied Hernandez's motion to suppress.

## V. CONCLUSION

For the foregoing reasons, we REVERSE Hernandez's convictions and REMAND to the district court.