# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 4, 2010

No. 09-40282

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JAMES DEMETRIUS BATTLE

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:08-CR-1015

Before SMITH, GARZA, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

James Demetrius Battle appeals his convictions on two counts of transporting illegal aliens by means of a motor vehicle for commercial advantage and private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).  For the reasons set forth below, we AFFIRM.

## I

Battle was a tractor-trailer driver for Rollins Transport Service ("Rollins Transport"), a Florida-based trucking company owned by Richard Rollins.  As

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-40282

part of their training, Rollins instructed new employees that it was against company policy as well as a violation of federal guidelines to transport passengers in the tractor-trailer cab while on duty.

Shortly after Rollins hired Battle, Rollins assigned him to pick up a freight load in Laredo, Texas for delivery to Charlotte, North Carolina. While en route, Battle stopped his tractor-trailer at a border patrol checkpoint manned by United States Border Patrol Special Agent Oswald Hernandez. A canine alerted to Battle's tractor-trailer cab and Battle admitted to Hernandez that he had five persons in the cab whom he had picked up at a truck stop. Hernandez determined that the individuals in the cab were illegal aliens and arrested Battle. At the time of his arrest, Battle had $3,500 in cash on his person.

Battle was charged with two counts of transporting illegal aliens by means of a motor vehicle for commercial advantage and private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). A jury found Battle guilty on both counts. Battle was sentenced to concurrent one year and one day terms on each count, to be followed by concurrent three-year terms of supervised release.

## II

Battle challenges the sufficiency of the evidence supporting his convictions. In evaluating a defendant's argument regarding the sufficiency of the evidence supporting his conviction, we consider "whether a rational jury, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense beyond a reasonable doubt." *United States v. Rivera*, 295 F.3d 461, 466 (5th Cir. 2002).

To establish a violation of 8 U.S.C. § 1324(a)(1)(A)(ii),[1] the Government must prove that "(1) an alien entered or remained in the United States in

---

[1] 8 U.S.C. § 1324(a)(1)(B)(i) states that if a violation of § 1324(a)(1)(A)(ii) occurs "for the purpose of commercial advantage or private financial gain," the violator shall "be fined . . . , imprisoned not more than 10 years, or both."

violation of the law, (2) [the defendant] transported the alien within the United States with intent to further the alien's unlawful presence, and (3) [the defendant] knew or recklessly disregarded the fact that the alien was in the country in violation of the law." *United States v. Nolasco-Rosas*, 286 F.3d 762, 765 (5th Cir. 2002). Battle does not dispute that the five aliens in his truck entered the United States illegally or that he transported all five of them, including the two named in the indictment, in his tractor-trailer for at least two hours. The sole issue is whether the Government presented sufficient evidence to show that Battle either knew or recklessly disregarded the fact that the individuals he transported were in the country illegally.

Rollins testified that Battle told him that he believed the people he was transporting were part of a family whose vehicle had broken down, and he argues on appeal that the fact he did not attempt to hide their presence in his vehicle from the border patrol agent shows his lack of knowledge regarding their immigration status. However, Special Agent Hernandez testified that Battle stated that there were five other people in the tractor-trailer's cab only *after* the canine at the checkpoint alerted to the cab, prompting Hernandez to ask Battle if he could take a look inside. This testimony suggests that Battle was not immediately forthcoming about the presence of the aliens and only revealed them to Hernandez when he suspected they would be discovered.

Two of the aliens testified that they crossed the border with the help of a guide, waited a few days, and were instructed to travel north in a blue tractor-trailer, identifying Battle's tractor-trailer as the vehicle they entered. Alien Pedro Espinoza-Espinoza testified that he was told by his smuggler "[t]hat at the place there was going to be a blue truck and I was supposed to get in there," and that while the smuggler did not say who would be driving the truck, "[h]e just told me to get in. That there was no problem, that things had been arranged." Alien Miguel Ceja-Rodriguez stated that he was the last of the five people to

3

enter the cab and that he did not know any of the other aliens, in contrast to Battle's contention that the people in his cab––four men and one woman, all adults––were a "family." None of the aliens possessed any luggage, and Ceja-Rodriguez testified that two of the aliens appeared dirty and smelled bad, which suggests adverse travel conditions in line with an illegal border crossing. Notably, the aliens entered the cab while it was unattended at the truck stop; Battle did not return to the cab until all five aliens were in his vehicle. A jury could have reasonably believed that this was a pre-arranged situation. "Circumstantial evidence alone can establish a defendant's knowledge or reckless disregard that the people harbored are illegally in the country." *United States v. De Jesus-Batres*, 410 F.3d 154, 161 (5th Cir. 2005). Thus, given this evidence, a reasonable jury could have concluded that Battle knew or recklessly disregarded the fact that his five passengers were aliens in the United States illegally.

Battle also possessed $3,500 in cash at the time of his arrest. As a Rollins Transport employee, Battle received a prepaid card with which he could purchase fuel and receive cash advances for job-related expenses. Battle only used his card for $50 cash advances twice while en route to Texas. These transactions, totaling $100, do not account for the $3,500 in Battle's possession when he was arrested. Battle contends that he earned $5,687.56 over the course of his employment with Rollins Transport, but this argument presumes that Battle did not spend any of those earnings on other expenses during the two-month period he was employed with Rollins Transport. Moreover, Battle had attempted to borrow $800 from Rollins shortly before leaving for Texas. This request would tend to indicate that, at the time he requested the loan, Battle had less than $800 available to him, despite possessing over four times that amount in cash at the time of his arrest three days later. This financial

4

No. 09-40282

discrepancy is sufficient evidence for a reasonable jury to believe that Battle transported the aliens for commercial advantage and private financial gain.

### III

Battle objects to the admission of Government Exhibits 9 and 10 at trial, arguing that the Government did not offer the proper evidentiary predicate for their admission. We review evidentiary rulings for an abuse of discretion. *United States v. Clark*, 577 F.3d 273, 287 (5th Cir. 2009).

Federal Rule of Evidence 803(6) permits records kept in the course of a regularly conducted business activity to be admitted as evidence. At trial, the district court admitted Government Exhibits 9 and 10, copies of consecutive weekly invoices that Transportation Clearinghouse, Inc. ("TCH") sent to Rollins Transport, to show the fuel and cash advance charges associated with the TCH card issued to Battle. As records-keeper for Rollins Transport, Rollins stated that his company maintained a prepaid account with TCH and that each driver had a prepaid card for use at truck stops for fuel or cash advances. Each driver's card had a unique personal identification number, and Rollins Transport received a weekly bill of each driver's individual transactions from TCH.

Battle argues that these exhibits were kept in the course of *TCH*'s business rather than Rollins Transport's business, and therefore were inadmissible without authentication by a TCH records custodian or other proper evidentiary foundation. The Government, however, is permitted to introduce records prepared by TCH as Rollins Transport's business records because these records were relied upon and used by Rollins in the ordinary course of *its* business. *See, e.g.*, *United States v. Ullrich*, 580 F.2d 765, 771–72 (5th Cir. 1978) (finding records admissible under FED. R. EVID. 803(6) that an owner of a business had incorporated into its records from records of an independent business); *see also United States v. Doe*, 960 F.2d 221, 222–23 (1st Cir. 1992) (same).

No. 09-40282

Battle points to *United States v. Ismoila*, 100 F.3d 380 (5th Cir. 1996), to support his argument that without testimony from a TCH records custodian, Exhibits 9 and 10 are inadmissible. However, in *Ismoila*, we found statements made by credit cardholders to their bank regarding stolen cards inadmissible under FED. R. EVID. 803(6) because "it is not the regular course of business for credit cardholders to fill out affidavits or otherwise give information to their banks regarding stolen credit cards." *Id.* at 392. The *Ismoila* court rejected these hearsay statements as outside the normal scope of business for the companies generating the documents. *Id.*

Conversely, the Exhibits at issue here were "integrated into the records" of Rollins Transport as "records transmitted by persons with knowledge and then confirmed and used in the regular course of . . . business." *Ullrich*, 580 F.2d at 771–72. Battle contends that Rollins had an "ax to grind" against him and that therefore Rollins' credibility was in question with regard to whether these were properly kept business records admissible under FED. R. EVID. 803(6). However, this argument attacks the *weight* the jury gives to the evidence, not its admissibility. The district court properly admitted Exhibits 9 and 10 as business record exceptions pursuant to FED. R. EVID. 803(6).

**IV**

For the foregoing reasons, we AFFIRM.