# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 2, 2022

Lyle W. Cayce
Clerk

No. 21-40530

United States of America,

*Plaintiff—Appellee*,

*versus*

Ciro Yasel Castillo-Santana,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:20-CR-777-1

Before Smith, Wiener, and Southwick, *Circuit Judges*.
Per Curiam:*

Ciro Yasel Castillo-Santana was charged with one count of conspiracy to transport and two counts of transporting illegal aliens within the United States. After a trial, Castillo-Santana was acquitted on the conspiracy charge, but the jury returned a guilty verdict on the two transportation charges. On

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-40530

appeal, he challenges the sufficiency of the Government's evidence and various evidentiary rulings by the district court. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2017, Castillo-Santana arrived in the United States from Cuba by travelling through Mexico. He was granted asylum and lawful permanent resident status. Castillo-Santana was familiar with his alleged co-conspirator, Lazaro Lopez-Torres, while in Cuba. Lopez-Torres would use Castillo-Santana's address in Houston, Texas, as his own when seeking asylum in 2019.

In his trial on the charges for transporting aliens, Castillo-Santana testified that at the beginning of the COVID-19 pandemic, he lost business as a barber. He started driving for hire in Houston, Texas, without being affiliated with an official rideshare company, but he also applied to be a driver for Uber and Lyft. He testified that being an unaffiliated driver for hire was a common practice in Cuba. Castillo-Santana testified that Lopez-Torres offered him $500 to drive five hours from Houston and pick up some friends, which Castillo-Santana considered a good price for the trip.

On March 13, 2020, Lopez-Torres sent, apparently by text, a photograph of Castillo-Santana's driver's license to an individual named Gallo Yunette. The next day, Yunette sent, also apparently by text, to Lopez-Torres a photograph of a Western Union receipt indicating that Yunette sent a $500 wire transfer to Castillo-Santana. Castillo-Santana obtained the transferred funds from Western Union about fifteen minutes later. He and Lopez-Torres started their expected 10-hour round trip not long thereafter. Left behind, though, were Castillo-Santana's cellphone and original driver's license. At trial, Castillo-Santana testified that his child was playing with the phone when he left, and he realized he did not have the device only after he was already driving.

2

No. 21-40530

Later that evening, Castillo-Santana and Lopez-Torres picked up Luis Mardonio Diaz-Perez and a minor with the initials R.O.A. at a gas station or restaurant in, apparently, McAllen, Texas, about 350 miles from Houston. Castillo-Santana later claimed he did not know the two riders were in the country illegally.  Both Diaz-Perez and R.O.A. later testified they were from Guatemala and that their families paid to smuggle them into the United States.  According to a testifying Border Patrol Agent, Castillo-Santana was driving the car, and both Diaz-Perez and R.O.A. stated they mostly rode in silence.  After Castillo-Santana drove for about 75 miles, he encountered the Falfurrias Border Patrol checkpoint.

According to the testimony of Border Patrol Agents, Castillo-Santana drove into a lane for commercial vehicles even though he was driving a passenger vehicle, played the radio loudly, gave evasive answers to their questions or failed to respond at all, and appeared agitated and eager to leave the encounter.  The agents testified they referred Castillo-Santana to secondary inspection, but he initially drove into the wrong area.  The agents determined they likely were facing an alien smuggling situation and took the occupants of the vehicle into custody.  Castillo-Santana resisted arrest, insisted he had done nothing wrong, and demanded to know why he was being detained.  He later testified his actions at the checkpoint were motivated by his feelings of confusion and fear.

Castillo-Santana was charged in a superseding indictment with a count of conspiracy to transport illegal aliens within the United States in furtherance of their being unlawfully present in the United States, and two counts of transporting undocumented aliens within the United States in furtherance of their violations of the law, all in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(II), and (a)(1)(B)(ii).  Castillo-Santana pled not guilty.  At trial, the Government presented live testimony from five witnesses and the depositions of two others.

No. 21-40530

Two lines of questioning of Edward Castro, a Border Patrol Agent at the Falfurrias Border Patrol checkpoint, are relevant to this appeal. The first concerns Agent Castro's testimony regarding his canine, which had been trained to detect the presence of certain controlled substances and of people, as well as locations where either had been. On direct examination, Agent Castro testified that the dog alerted on Castillo-Santana's vehicle while it was in the primary inspection line. When challenged about the alert by defense counsel on cross examination, Agent Castro agreed that the vehicle did not contain any controlled substances and that neither of the aliens was concealed. During the Government's questioning on redirect, defense counsel objected several times to a line of questioning regarding the canine alert. The Government asked, or attempted to ask, at least four times why a canine would alert if no contraband was found, indicating that it could be "derivatives" of "narcotics o[r] concealed humans." The district court eventually sustained the defense's objections but denied the defense's contemporaneous motion for a mistrial. The jury was instructed to disregard the testimony.

The second relevant line of questioning of Agent Castro addressed Castillo-Santana's behavior when he was apprehended. During Agent Castro's direct examination, defense counsel objected to questions and testimony regarding Castillo-Santana's behavior while he was being detained. Agent Castro first testified that Castillo-Santana displayed "super-human strength" as he resisted the agents' attempts to detain him. After identifying the details of the detention, the Government asked additional questions about the "super-human strength" Castillo-Santana displayed:

> Let's go to this super-human strength that you were talking about. You have told us that you worked as a police officer in the armed forces before you became a Border Patrol Agent, and also as a bouncer at a nightclub before. Have you had

experience deal— experience dealing with intoxicated individuals?

Defense counsel objected to the testimony as irrelevant. The district court overruled the objection. The Government then inquired: "When you first made contact with the Defendant in the primary inspection area — well, first, tell us what it is that you know that show that — show a person to be intoxicated? What signs do you look for?" Again, defense counsel objected on relevance grounds, pointing out there was no evidence that Castillo-Santana had been intoxicated at the time of the stop. This time, the district court sustained the objection. The Government tried yet again: "Did you have reason to think that there was a — why would a person exhibit super-human strength?" Agent Castro replied, "they'd be under the influence — " and defense counsel immediately objected on speculation but was overruled. Agent Castro affirmed he had "run across [super-human strength] before" and stated it happened "if the person's under the influence of some type of substance." After defense counsel objected one more time, arguing that "there has been nothing mentioned about intoxication and that is incredibly misleading," the court asked the Government if that was "where [the Government was] going." The Government, in the presence of the jury, replied that the evidence was being offered "to show state of mind . . . . There was a suspicion when we interviewed the agent . . . the mention of super-human strength and the possibility they could have been under the influence."

The next day, the district court issued a detailed instruction for the jury to disregard the testimony about intoxication and canine alerts, emphasizing the case did not involve narcotics and that no narcotics were found in the vehicle. At the conclusion of the Government's case that day, Castillo-Santana moved for a directed verdict of acquittal on the grounds of insufficient evidence. This motion was denied.

After the defense's case was presented, which included testimony from the defendant, the jury acquitted him on the conspiracy charge but returned a guilty verdict on the two transportation charges. He was sentenced to 21 months of imprisonment on each count, running concurrently, followed by two years of supervised release. Following sentencing, Castillo-Santana filed a timely notice of appeal. *See* Fed. R. App. P. 4(b)(1)(A)(i).

## DISCUSSION

Castillo raises two primary issues on appeal. He first challenges whether the evidence was sufficient to support the two counts of conviction. He then argues that improper testimony and prosecutorial comments deprived him of a fair trial. We consider each argument in turn.

### I.     *Sufficiency of the evidence.*

When a defendant moves for a judgment of acquittal at the close of the Government's case on the grounds of insufficient evidence, the district court's denial is reviewed *de novo*. *United States v. Garcia-Gonzalez*, 714 F.3d 306, 313 (5th Cir. 2013). Castillo-Santana made such a motion, so the issue was thus preserved for *de novo* review. *See id.*

On a *de novo* review for sufficiency of evidence, our task is to determine whether, "after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (en banc) (emphasis in original). We have no authority to decide whether the jury "made the correct guilty or innocence determination, but [only] whether it made a rational decision to convict or acquit." *United States v. Burton*, 126 F.3d 666, 677 (5th Cir. 1997) (quotation marks omitted). That means we are

not to "second-guess the determinations of the jury as to the credibility of the evidence." *United States v. Guidry*, 406 F.3d 314, 318 (5th Cir. 2005). Instead, if we are "faced with a record of historical facts that supports conflicting inferences" and the jury has returned a guilty verdict, we "must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution," so long as the inferences supporting every element of the crime are rational. *Vargas-Ocampo*, 747 F.3d at 301–02 (quotation marks and citation omitted).

Castillo-Santana challenges the sufficiency of the evidence for a single element of his convictions. To find guilt on the transportation counts, the jury had to find beyond a reasonable doubt that "(1) an alien entered or remained in the United States in violation of the law; (2) [Castillo-Santana] transported the alien within the United States with intent to further the alien's unlawful purpose; and (3) [Castillo-Santana] knew or recklessly disregarded the fact that the alien was in the country in violation of the law." *See United States v. Nolasco-Rosas*, 286 F.3d 762, 765 (5th Cir. 2002). Castillo-Santana challenges the sufficiency of the evidence to prove the third element, arguing the convictions "cannot stand because the evidence did not establish that Mr. Castillo-Santana knew or recklessly disregarded the illegal status of his two passengers."

The Government "almost always" proves a defendant's mental state by offering circumstantial evidence from which a jury can draw its own inferences. *United States v. Garcia*, 883 F.3d 570, 575 (5th Cir. 2018). We have acknowledged that "a defendant's purpose often goes hand in hand with certain suspicious circumstances"; accordingly, "we do not forbid jurors from drawing rational connections between the two." *Id.* We have held this to be true in cases such as the one before us now: "Circumstantial evidence alone can establish a defendant's knowledge or reckless disregard

that the people [transported] are illegally in the country." *United States v. De Jesus-Batres*, 410 F.3d 154, 161 (5th Cir. 2005).

We have considered many factors in evaluating a sufficiency of the evidence challenge regarding knowledge or reckless disregard of the undocumented status of transported individuals. Panels of this court have considered "inconsistent and rather implausible explanations," passengers hidden and "riding in complete silence," the inference of a "pre-arranged situation," and the absence of meaningful luggage for a long road trip. *See United States v. Ramirez*, 250 F. App'x 80, 83 (5th Cir. 2007); *United States v. Mata*, 839 F. App'x 862, 868 (5th Cir. 2020); *United States v. Battle*, 368 F. App'x 560, 563 (5th Cir. 2010); *United States v. Hernandez-Acuna*, 202 F. App'x 736, 743 (5th Cir. 2006).

Castillo-Santana argues significant facts distinguish his case from those in which certain pieces of circumstantial evidence sufficed to show knowledge or reckless disregard of the illegal aliens' status. Neither alien testified about speaking to Castillo-Santana about teimmigration status; Castillo-Santana never told his passengers to hide or attempted to conceal their presence; and there was also no evidence of the passengers' lack of cleanliness that could have alerted Castillo-Santana that they had walked through the hot, dusty, and dry terrain near the Mexican border.

Such distinctions, though, are not sufficient for us to conclude that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Vargas-Ocampo*, 747 F.3d at 301. All that needed to be proven was the reckless disregard of the aliens' status. The jury heard evidence that the ride for the aliens was pre-arranged; that Castillo-Santana received a $500 payment over a wire service for that ride; that he did not bring his cell phone or original driver's license along for the drive; that he drove five hours at night to a location near the border to pick up passengers

he did not know; that a third party directed the passengers into the car at pickup; that Castillo-Santana asked no questions of his passengers and drove the duration of the ride in silence, even though he later claimed that the passengers were friends of his co-defendant who was also in the vehicle; that he acted nervously and elusively at the Falfurrias checkpoint; that he spoke for his passengers, asserting that they were Cuban without ever having said a word to them; and that he failed to comply with instructions and directions at both the primary and secondary inspections by driving into the wrong lane, evading questions, and even resisting arrest. This significant circumstantial evidence was sufficient to establish a *mens rea* of at least recklessness.

## II.     *Improper prosecutorial remarks*

Castillo-Santana also argues that multiple trial errors, independently and collectively, denied him a fair trial. Among his arguments is that the district court abused its discretion by refusing to grant a mistrial as a result of Agent Castro's testimony that Castillo-Santana's car may have previously carried contraband; that allowing Agent Castro's comments about super-human strength and the prosecutor's suggestions about intoxication were reversible error; and, finally, that the combination of errors merits reversal and remand for a new trial should either error, standing alone, prove insufficient. We discuss each argument in turn.

We first consider Agent Castro's testimony about the reasons for the canine's alert on Castillo-Santana's vehicle. The denial of a motion for mistrial is reviewed for abuse of discretion if counsel contemporaneously objected to the actions that led to the motion. *United States v. Sanders*, 952 F.3d 263, 281 (5th Cir. 2020). Because Castillo-Santana objected to Agent Castro's explanation for the canine alert at trial, we review the denial of the motion for mistrial on those grounds for abuse of discretion.

"If a defendant moves for a mistrial on the grounds that the jury heard prejudicial testimony, a new trial is required only if there is a significant possibility that the prejudicial evidence has a substantial impact upon the jury verdict, viewed in light of the entire record." *United States v. Velasquez*, 881 F.3d 314, 343 (5th Cir. 2018) (quotation marks and citation omitted). We "give great weight to the trial court's assessment of the prejudicial effect of the evidence," and "prejudice may be rendered harmless by a curative instruction," as "jurors are presumed to follow the court's instructions." *United States v. Richardson*, 781 F.3d 237, 246 (5th Cir. 2015) (quotation marks and citation omitted). There is, though, "an exception for testimony that is so highly prejudicial as to be incurable by the trial court's admonition." *Id.* (quotation marks and citation omitted).

The evidence in this case does not satisfy the exception to the general rule. The jury heard a dialogue between Agent Castro and the Government in which the Government asked, or attempted to ask, at least four times why a canine would alert if no contraband was found, and the Government pointed out this could be because of "derivatives" of "narcotics o[r] concealed humans" before the district court intervened. The district court, though, took several curative measures to insist that jurors not consider improper testimony regarding narcotics. The court first admonished that "there is no evidence of narcotics in this case," and jurors should "disregard any inference to the contrary." The court then returned to the issue the next morning, reinforcing its instruction to disregard any inference that there were narcotics in the vehicle, going so far as to say, "the answers to this line of questioning were inadmissible and are stricken from the record." Although the narcotics evidence was prejudicial, that prejudice was cured by the district court's careful and repeated instructions.

Agent Castro's testimony regarding the canine's alert to potential derivative odors of people who had previously been concealed also do not

require reversal. Although such evidence was inadmissible and prejudicial, it was not likely to have "a substantial impact upon the jury's verdict, viewed in light of the entire record." *Velasquez*, 881 F.3d at 343 (quotation marks and citation omitted). First, that Castillo-Santana's vehicle may have previously concealed people was expressed as a suggestion. Next, the district court took significant steps to diminish the extent of potential prejudice. It is certainly possible the jury understood the district court's admonition that "the answers to [the] line of questioning [about concealed narcotics] are inadmissible and are stricken from the record" included any answers about individuals being concealed, because the answers were given at the same time. Nonetheless, offsetting any remaining potential prejudice was a wealth of circumstantial evidence supporting Castillo-Santana's *mens rea* of recklessness, the only fact at issue at trial. Accordingly, it was unlikely that the comments regarding individuals having been previously concealed had a substantial impact on the jury's verdict.

Next, Castillo-Santana argues the district court committed reversible error in permitting Agent Castro's comments about super-human strength and the prosecutor's suggestions about intoxication. A district court's decision to admit or exclude evidence is reviewed for abuse of discretion. *United States v. Gutierrez-Farias*, 294 F.3d 657, 662 (5th Cir. 2002). Challenges to improper prosecutorial remarks are typically evaluated under a two-step analysis with differing standards of review at each point: first, the court considers *de novo* "whether the prosecutor made an improper remark," and second, the court queries whether the district court abused its discretion in deciding whether the comment "affected the substantial rights of the defendant." *United States v. Bolton*, 908 F.3d 75, 93 (5th Cir. 2018).[1]

---

[1] Failure to preserve an issue results in plain-error review. *See Bolton*, 908 F.3d at 87–88; 94 (prosecutorial comments); *Sanders*, 952 F.3d at 282. The Government questions

No. 21-40530

Assuming the remarks were improper, we often consider three factors to decide whether the district court abused its discretion in finding that the defendant's rights were not affected: "(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." *United States v. Munoz*, 150 F.3d 401, 415 (5th Cir. 1998) (quotation marks and citation omitted).

Although allegations of intoxication and drug use and possession are prejudicial, the magnitude of the prejudice here is lessened by the fact that the evidence pertained to a mere "suspicion" of intoxication and drugs and that the charged conduct in this case is not at all related to intoxication or drugs. Second, we already identified clear curative instructions regarding evidence of narcotics that were given the morning after the questionable statements. Finally, the strength of the other evidence of guilt remains substantial. Castillo-Santana's claim fails under *Munoz*. *See* 150 F.3d at 415.

Finally, Castillo-Santana asserts the errors create a cumulative effect that requires a new trial. "The cumulative error doctrine . . . provides that an aggregation of non-reversible errors (*i.e.*, plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Delgado*, 672 F.3d 320, 343–44 (5th Cir. 2012) (en banc) (quotation marks and citation omitted). We apply the doctrine sparingly and have held that it "necessitates reversal only in rare instances" when "errors so fatally infect the trial that they violated the trial's fundamental fairness." *Id.* at 344 (quotation marks and citation omitted).

---

whether Castillo-Santana's challenge was adequately preserved. As Castillo-Santana's challenge fails under either standard of review, we need not reach this question.

Castillo-Santana emphasizes that the jury heard suggestions that he was a repeat offender whose vehicle previously contained drugs or people who were being smuggled, allowing jurors more easily to conclude that he had the required *mens rea*; that jurors heard the implication that he gained super-human strength from an unknown intoxicant, thereby making it easier to conclude he was engaged in another illegal activity; and that the jury heard a suggestion during a sidebar conversation from the prosecutor that she knew inculpatory facts not in evidence. Together, Castillo-Santana insists, these implications could convince the jury he was involved with illegal drugs despite the case's complete absence of drug charges and drug evidence.

The first uncured error — Agent Castro's inadmissible suggestion that Castillo-Santana was previously involved in the trafficking of aliens — is unrelated to the suggestions that Castillo-Santana may have been on drugs at the time of his arrest. The errors therefore are "unrelated to each other," limiting the potential for a "synergistic combination" that may require reversal. *See United States v. Lara*, 23 F.4th 459, 484 (5th Cir. 2022). These facts do not transform this into a "rare case in which individual errors do not justify reversal but the synergistic combination of multiple errors violate[s] the defendant's right to a fair trial." *See id*. Although there were some errors at trial, these errors do not combine to merit reversal.

AFFIRMED.