United States Court of Appeals
Fifth Circuit

**F I L E D**

May 17, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-20505

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

TERESA DE JESUS-BATRES; JOSE ALVAREZ-BATRES;
WALBERTO ALVAREZ-BATRES,

Defendants - Appellants.

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, SMITH and DEMOSS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In this direct criminal appeal, the defendants appeal their convictions and sentences on

charges of harboring illegal aliens for financial gain and conspiracy to hold aliens hostage. Based

on arguments of counsel, our review of the briefs and the record, we AFFIRM their convictions,

MODIFY their sentences on Count One and otherwise AFFIRM their overall sentences.

I.

Teresa De Jesus-Batres ("De Jesus-Batres"), Jose Alvarez-Batres ("Jose") and Walberto

Alvarez-Batres ("Walberto") (a mother and her two sons) were indicted on three counts: (1)

aiding and abetting alien harboring and attempted alien harboring of four named illegal aliens for

commercial advantage and financial gain, in violation of 8 U.S.C. § § 1324(a)(1)(A)(iii),

(A)(v)(II), (B)(i) and 18 U.S.C. § 2; (2) aiding and abetting alien transportation of the same four

illegal aliens for commercial advantage and financial gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (A)(v)(II), (B)(i), and 18 U.S.C. § 2; and (3) a hostage taking conspiracy regarding the same four illegal aliens, in violation of 18 U.S.C. § 1203(a).

The charges arose from the following facts. In July 2002, a group of seven Mexican citizens arranged to be illegally smuggled into the United States for a fee to be paid by relatives in the United States. Each relative agreed to pay a $1200 or $1300 smuggling fee. Two guides, Gabino and El Viejito, accompanied the group as they waded across the Rio Grande and walked to I-35. After waiting at the highway for a couple of hours, the group was picked up by a Suburban and a white pickup truck. The truck was driven by appellant De Jesus-Batres' son-in-law, Antonio. After the Suburban broke down, the aliens were transported the rest of the way to Houston in the pickup truck. Gabino told the aliens that he would carry a weapon in Houston.

When the truck reached Houston, the aliens were delivered to De Jesus-Batres' house. Jose and Walberto sometimes live there, as well as De Jesus-Batres' daughter and son-in-law Antonio (the one who drove the white truck). De Jesus-Batres, Jose and Walberto were inside the house when the aliens arrived, along with Antonio and Alejandro, another participant. The aliens were directed to sit on the kitchen floor and stay there. Permission was required to leave the kitchen, even to use the restroom.

Over the next two days, Gabino and Alejandro called the aliens' relatives demanding $1500, instead of the agreed upon $1200 or $1300 fee. Three aliens were released upon payment. The family members of the four remaining aliens stated that they could not pay the increased fee. During this time, Gabino, Alejandro and Jose threatened the aliens, De Jesus-Batres, Jose and Walberto took turns guarding the aliens, and De Jesus-Batres and Jose carried

2

guns.

One of the aliens, Diaz-Aboytes, managed to flee the house by pushing De Jesus-Batres out of the doorway. De Jesus-Batres told the remaining aliens that if she had had her firearm at the time, she would have shot Diaz-Aboytes. De Jesus-Batres, Jose and Walberto ran after Diaz-Aboytes as Gabino watched the rest of the group. Diaz-Aboytes ran down the street to a fire station. Two Houston police officers were in their patrol car there. Diaz-Aboytes told the officers that he had just escaped from a house where he was being held for $1500, that coyotes had brought him from Mexico for a fee and then increased the fee for his release. He also told the officers that he feared for his life.

Diaz-Aboytes pointed out Jose and Walberto who were walking along the street to the officers as two of his captors. The officers detained them, placing them in the back of their patrol car after patting them down. While the officers were waiting for a fluent Spanish-speaking officer to arrive, De Jesus-Batres approached the officers' vehicle. The officers told her what Diaz-Aboytes had said and asked her if they could look inside the house. She agreed and walked back to her house. Diaz-Aboytes led the officers to the house, where De Jesus-Batres was waiting outside. She claimed that she could not find her house key.

Houston police officers then knocked on the door, yelling in Spanish to open the door. The police entered the house finding the three illegal aliens. They removed them from the house and searched it. Approximately 45 minutes after they entered the house, the officers then searched the detached garage, which was about 20 to 30 feet from the rear of the house. The garage door was open. Through the open door, Officer Leija saw a white pickup truck. When he checked the garage, he saw a gun in the bed of truck, which was the same gun Jose had carried.

3

Another gun had been found in De Jesus-Batres' purse during the search of the house.

All of the defendants filed motions to suppress the guns found. The motions were granted in part (as to the gun found in De Jesus-Batres' purse) and denied in part (as to the gun found in the garage). A judgment of acquittal was granted as to Count Two after the presentation of the government's case. A jury found all three defendants guilty of Counts One and Three. All defendants appeal.

## II.

De Jesus-Batres and Jose argue that the district court erred in denying their motion to suppress the gun found in the search of the garage and Walberto and Jose argue that the district court erred in denying their motion to suppress all evidence discovered as a result of their arrests. In an appeal from the denial of a motion to suppress, this court reviews legal questions *de novo* and factual findings for clear error. United States v. Valadez, 267 F.3d 395, 397 (5th Cir. 2001). If a particular suppression argument is not made to the district court, review is for plain error. United States v. Maldonado, 42 F.3d 906, 909-13 (5th Cir. 1995).

## A.

The district court ruled that the warrantless search of the garage fell within the exigent circumstances exception to the warrant requirement because officers searched the garage for more aliens or potential suspects inside. The court also ruled that the gun found in the pickup parked in the garage was not found in violation of the Fourth Amendment because it was found in open view, in the bed of the truck. A finding of exigent circumstances is a factual finding, reviewed for clear error. United States v. Blount, 123 F.3d 831, 837 (5th Cir. 1997)(*en banc*). Although there is no set formula, exigent circumstances generally exist when there is a risk that officers or

innocent bystanders will be endangered or that evidence will be destroyed.  Id.  This court does "not second-guess the judgment of experienced law enforcement officers concerning the risks of a particular situation."  Id.

The district court did not clearly err in finding exigent circumstances under the facts of this case.  The officers went to the house on reports from Diaz-Aboytes that he had been held hostage and several others were still being held by an unknown number of captors.  When the officers arrived at the house, they were told by the aliens they released that they were not sure if anyone else was around.  After releasing the three remaining aliens from the house and searching the house and attic, Officer Leija searched the garage because he did not know if additional aliens or suspects were hiding there.  The aliens could have been injured or sick and any additional suspects could have posed a safety risk to the officers.  These facts are sufficient to uphold the district court's finding. See  United States v. Mendoza-Burciaga, 981 F.2d 192, 196-97 (5th Cir. 1992) and Warden v. Hayden, 387 U.S. 294, 298-99 (1967).  Under these circumstances, the delay of approximately 45 minutes before the officers entered the garage does not by itself preclude a finding of exigent circumstances.

De Jesus-Batres and Jose also argue that the plain view exception does not apply to the gun because the firearm's incriminating nature was not readily apparent when the officers seized it.  This basis for suppression was not raised in the district court and is therefore subject to plain error review.  The plain view exception allows officers to seize evidence in plain view if they are lawfully in the position from which they view the evidence, the incriminating nature of the evidence is immediately apparent, and the officers have a lawful right of access to the evidence. United States v. Munoz, 150 F.3d 401, 411 (5th Cir. 1998).  At the time the officers searched the

garage, they were responding to charges that the aliens had been held against their will for money, although they were not clear as to whether Diaz-Aboytes had told them that his captors were armed. Under these circumstances, the district court did not commit error, plain or otherwise, in concluding that the incriminating nature of the gun was apparent.

B.

Walberto and Jose argue that their initial detention at the fire station was a warrantless arrest without probable cause. The district court rejected the argument, finding that no arrest occurred at that point, only a detention for investigatory purposes. An officer with specific and articulable facts that reasonably lead the officer to believe that a person has committed or is about to commit a crime can briefly detain and question that person. United States v. Chavez, 281 F.3d 479, 485 (5th Cir. 2002). The officers clearly had specific and articulable facts in this case, namely the report from Diaz-Aboytes that Walberto and Jose had smuggled him and others into the U.S. from Mexico and were holding him and others against their will. The officers then transported Walberto and Jose one block to the house for investigation.

We need not decide whether these facts constitute an arrest under the law of this circuit and, if so, whether the officers had probable cause for an arrest.[1] Even if the district court erred

_____

[1] The government does not cite any 5th Circuit cases to support its contention that placing the defendants in the back of the police car and transporting them to another location to further investigate allegations of a crime is a detention rather than an arrest. Rather it relies on a case from the 7th Circuit in support of its argument. United States v. Vega, 72 F.3d 507, 511 (7th Cir. 1995)(Agents with reasonable suspicion to believe defendant was engaged in drug trafficking in a garage could reasonably request that he accompany them from a shopping center to the garage to investigate.) Whether the 7th Circuit's decision is in accord with Supreme Court precedent is unclear. The Supreme Court has stated that, "A seizure of the person within the meaning of the Fourth and Fourteenth Amendments occurs when, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Kaupp v. Texas, 538

in its conclusion that the defendants were not under arrest at the point where the officers placed them in the rear of the police car and transported them to De Jesus-Batres' residence, any error is harmless because the defendants cannot identify any evidence, besides the fact of their detention, that should have been suppressed if the motion were granted. Appellants point to no statements by Jose or Walberto or any physical evidence that the police recovered that assisted the presentation of this case. Diaz-Aboytes led the officers back to the house where he had been held. We see no merit in this argument and the district court did not commit reversible error in admitting the fact of Jose and Walberto's detention.

III.

De Jesus-Batres and Walberto argue next that there is insufficient evidence to support their convictions. In reviewing a challenge to sufficiency of the evidence, this court views all evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt. United States v. Carrion-Caliz, 944 F.2d 220, 222 (5th Cir. 1991).

Count One charged aiding and abetting alien harboring and attempted alien harboring of the four illegal aliens for commercial advantage and private financial gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii), (A)(v)(II), (B)(i) and 18 U.S.C. § 2. To prove this offense, the government was required to establish the following four elements: (1) the alien entered or remained in the United States in violation of the law, (2) the defendant concealed, harbored or sheltered the alien in the United States, (3) the defendant knew or recklessly disregarded that the

---

U.S. 626 (2003)(An involuntary transport to a police station for questioning is sufficiently like arrest to invoke traditional rules relating to arrests.)

7

alien entered or remained in the United States in violation of the law, and (4) the defendant's conduct tended to substantially facilitate the alien remaining in the United States illegally.

Count Three charged a hostage taking conspiracy regarding the four illegal aliens, in violation of 18 U.S.C. § 1203(a). To prove this offense, the government was required to establish that the defendants (1) seized or detained another person, and (2) threatened to kill, injure or continue to detain that person, (3) with the purpose of compelling a third person or government entity to act in some way. Carrion-Caliz, 944 F.2d at 223. Conspiracy requires direct or indirect agreement to commit hostage taking, knowledge that the purpose of the agreement was unlawful and joinder in the agreement to further its unlawful purpose.

On Count One, De Jesus-Batres and Walberto argue specifically that the government failed to prove that they knew the aliens were illegally in the country and that the offense was committed for financial gain. Circumstantial evidence alone can establish a defendant's knowledge or reckless disregard that the people harbored are illegally in the country. United States v. Rubio-Gonzalez, 674 F.2d 1067, 1071 (5th Cir. 1982). Evidence was presented at trial which established that the defendants were part of an operation to smuggle illegal aliens into the country for a smuggling fee. The aliens came to De Jesus-Batres' home directly upon entry into the United States along with the parties who led them across the border and into Houston. Each of the defendants took turns guarding the aliens until their relatives paid the smuggling fee. This evidence was sufficient to establish that the defendants knew that the aliens entered or remained in the United States in violation of the law.

The government was not required to prove that the offense was committed for financial gain. The Judgment of Conviction reflects that the defendants were convicted of aiding and

8

abetting alien harboring. Although the indictment is ambiguous as to whether the defendants were charged both as principals and as aiders and abettors, we agree with the government that the evidence was presented at trial that could support defendants' conviction as principals. However, this ambiguity is easily resolved because the Judgment of Conviction declares defendants guilty of aiding and abetting and not as principals. When a defendant is tried and convicted for aiding and abetting under 8 U.S.C. § 1324, the question of financial gain by the defendant or others is immaterial. United States v. Nolasco-Rosas, 286 F.3d 762, 766-67 (5th Cir. 2002). The effect on the defendants' sentences as a result of our conclusion that the defendants stand convicted only for aiding and abetting on Count One will be addressed later in this opinion.

As to Count Three, the defendants argue that the government failed to produce sufficient proof to establish that they conspired to compel a third person to act in some way, i.e. to pay money for the release of the aliens. To establish that the defendants conspired to achieve this objective, the government need only prove that De Jesus-Batres and Walberto "took concerted action pursuant to an agreement" to compel a third person to take this action. Both defendants were at De Jesus-Batres' home when the aliens were delivered from the border. One of the aliens testified that the increased payment for their release was demanded from the moment they arrived. Evidence was presented that De Jesus-Batres and Walberto had control over the illegal aliens and took turns keeping watch over them. De Jesus-Batres was armed. Numerous phone calls were made from the small house where the aliens were being held to their relatives demanding more money. The obvious reason the aliens were held hostage was to extract the additional money from their relatives. Three aliens were released after relatives paid the amount demanded. Both De Jesus-Batres and Walberto chased after Diaz-Aboytes when he escaped. The entire course of

9

events took place over only two days, in a small house in which every adult resident was assisting in holding the aliens captive and therefore deeply involved in the conspiracy. The government clearly satisfied its burden of proof on this element.

IV.

The defendants argue next that the district court erred in its comments to the jury regarding the judgment of acquittal on Count Two. After the court decided, outside the presence of the jury, to grant the motion for judgment of acquittal on Count Two and deny it on Counts One and Three, the court advised the jury that the instructions omitted Count Two of the indictment because that count was no longer part of the jury's consideration. The judge also told the jury that the removal of Count Two was not an indication regarding the other two counts, and that it had made a threshold legal inquiry as to each count to determine if the government had proved its case for submission to the jury. He said that he had determined that the threshold had not been met as to Count Two, but that the threshold had been met as to Counts One and Three and it was up to the jury to determine whether the defendants were guilty as to those counts. Specifically, the defendants complain of the judge's statement that "I have determined that threshold evidence to submit Counts 1 and 3 to you does exist. There is some evidence from which you may determine, if you do, that the government has proved its case beyond a reasonable doubt, you could find the defendants guilty." However, the court also stated that despite the threshold evidence finding, they could conclude that there was not enough to find the defendants guilty beyond a reasonable doubt. These comments on the evidence on the various charges appear to have been made in a balanced way and also indicated to the jury that the ultimate decision on guilt or innocence would rest with them. We see no error. See Gant v. United

10

States, 506 F.2d 518, 520 (8th Cir. 1974); United States v. Anderson, 471 F.2d 201, 204 (5th Cir. 1973).

V.

For the first time on appeal, Jose argues that the indictment and jury instructions were inadequate because they failed to allege that he committed the crime in Count One (alien harboring) with intent to violate the immigration laws. He concedes that this element of intent is not part of the statute of conviction, 8 U.S.C. § 1324 (a)(1)(A)(iii), but that the allegation is required under Ninth Circuit caselaw. United States v. Nguyen, 73 F.3d 887, 894-95 (9th Cir. 1995) and United States v. Barajas-Montiel, 185 F.3d 947, 951–53 (9th Cir. 1999). This circuit follows a different rule and has held, as to similar offenses, that proof of specific intent to violate immigration laws is not required. United States v. Morales-Palacios, 369 F.3d 442 (5th Cir. 2004)(specific intent is not an element of attempted illegal reentry); United States v. Rivera, 879 F.2d 1247, 1251 (5th Cir. 1989)("willful transportation" is not an element of alien transporting). This circuit addressed this specific issue as to alien harboring in an unpublished opinion and concluded that specific intent is not an element of the offense of alien harboring. United States v. Valerio-Santibanez, 81 Fed. Appx. 836 (5th Cir. 2003) (unpublished), *cert. denied,* 124 S. Ct. 2862 (2004). We see no reason to depart from that reasoning.

VI.

Jose contends that the district court should have instructed the jury on multiple conspiracies. He made this request in writing prior to trial, but the district court denied the request on the ground that there was only evidence of one conspiracy. This court reviews the denial of a requested jury instruction for abuse of discretion. United States v. McClatchy, 249

F.3d 348, 356 (5th Cir. 2001). Because Jose made a timely request for an instruction, this court examines whether there is evidence to support the issuance of the multiple conspiracies charge. United States v. Stowell, 947 F.2d 1251, 1258 (5th Cir. 1991).

Jose's argument on this issue is related to his contention that the indictment and jury charge were inadequate for failure to require a finding that Jose intended to violate the immigration laws of the United States. He states "there was sufficient evidence for the jury to find that although Jose Batres may have been a member of a conspiracy to hold the immigrants hostage to compel others to pay for their release, that he was not guilty beyond a reasonable doubt of harboring the aliens with the specific intent to further their violation of the immigration laws." There are many problems with this argument. First, as we concluded above, specific intent to violate immigration laws is not required to prove alien harboring. Also the alien harboring count was not charged as a conspiracy. Finally, evidence presented at trial is consistent with a single conspiracy. The district court did not abuse its discretion in refusing to give Jose's requested instruction.

VII.

The defendants raise several issues related to their sentences. All defendants were sentenced using the 2002 edition of the Guidelines and their sentences were calculated under U.S.S.G. § 2A4.1 which is the appropriate section for violations of 18 U.S.C. § 1203(a) (Count Three). The base offense level for this section is 24, to which 6 levels were added based on the demand to the families of the victims in an attempt to secure more money for the release of the aliens. U.S.S.G. § 2A4.1(b)(1). Jose and De Jesus-Batres were sentenced at the low end of their guideline range (97 to 121 months) to 97 months imprisonment on Counts One and Three to run

concurrently, followed by five years supervised release. The PSR documents that Walberto had a higher criminal history category. Walberto was also sentenced at the low end of his guideline range (121 to 151 months) to 121 months imprisonment on Counts One and Three to run concurrently, followed by five years supervised release.

A.

First, Jose argues that the district court erred in denying him a two-level mitigating role reduction in his offense level.[2] The PSR prepared for Jose, like those prepared for the other defendants, did not recommend a mitigating role reduction. Jose requested a two-level reduction under U.S.S.G. § 3B1.2(b) for being a minor participant in the offense. U.S.S.G. § 3B1.2 allows several levels of reductions based on a defendant's role in the offense: 4 levels for a minimal participant, 2 levels for a minor participant and 3 levels if his role falls between minimal and minor. A minor participant is "less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. n.4. The defendant has the burden of proving that his role in the offense was minimal or minor. United States v. Atanda, 60 F.3d 196, 198 (5th Cir. 1995). To qualify as a minor participant, a defendant "must have been peripheral to the advancement of the illicit activity." United States v. Miranda, 248 F.3d 434, 446-47 (5th Cir. 2001).

The PSR addendum responded to Jose's objection by pointing out that Jose served as an armed guard and chased Diaz-Aboytes when he escaped. Therefore, the PSR characterized Jose

_____

[2]We read Booker to apply only to sentencing adjustments based on judge-found facts which increase a defendant's sentence, not to mitigating adjustments. United States v. Booker, 125 S. Ct. 738, 763 (2005) (considering as an alternative remedy the requirement of jury findings of sentencing factors, which system was recognized as having the anomaly that judges could freely adjust base offense levels up but not down within the guideline range without jury findings.)

and his codefendants as average participants whose actions were not substantially less culpable than most other participants as would be required to qualify for the requested reduction. Antonio and Gabino were classified as leaders in the conspiracy. The district court adopted the PSR and the addenda's factual findings and denied Jose's request. This court reviews for clear error a district court's findings on whether a defendant is entitled to a mitigating role reduction. United States v. Virgen-Moreno, 265 F.3d 276, 296 (5th Cir. 2001).

Given the facts set forth about Jose's participation in the charged crimes, the district court did not clearly err in concluding that Jose was not entitled to a reduction for a minor role in the offense. The PSR indicated that Jose was armed and guarded, detained and threatened the illegal aliens. Although Jose made the objection, he did not present rebuttal evidence and the district court was entitled to rely on the facts stated in the PSR. United States v. Peters, 283 F.3d 300, 314 (5th Cir.), *cert. denied*, 536 U.S. 934 (2002).

B.

Appellants argue next that the sentence on Count One is limited to five years, because it was charged on an aiding and abetting theory. The punishment for aiding and abetting is limited to five years, without regard to whether the offense was committed for financial gain. Nolasco-Rosas, 286 F.3d at 766-67. The government concedes that if this court finds the defendants were convicted of aiding and abetting a principal to harbor illegal aliens, their prison sentences on Count One must be modified to five years. As discussed above, the Judgments of Conviction make it clear that appellants were convicted of aiding and abetting the harboring of illegal aliens. Accordingly, we modify the judgments as to all defendants to reflect a five-year prison sentence on Count One. This modification does not affect the overall terms of imprisonment because the

14

defendants' concurrent sentences on Count Three exceed the modified sentence on Count One. United States v. Rodriguez-Martinez, 329 F.3d 419, 420 (5th Cir. 2003).

C.

Another modification to the sentence is required because, as the government concedes, the defendants were sentenced to improper terms of supervised release. As stated above, the statutory maximum sentence on Count One was five years. Count One was therefore a Class D felony. 18 U.S.C. § 3559(a)(4). A Class D felony has a maximum supervised release term of three years. 18 U.S.C. § 3583(b)(2). The five-year supervised release term imposed for Count One exceeds this limit and therefore constitutes plain error. Rodriguez-Martinez, 329 F.3d at 420. Accordingly, we modify the judgments as to all defendants to reflect a three-year term of supervised release on Count One. This modification does not affect the overall terms of supervised release because the defendants' terms of supervised release on Count Three exceed the modified sentence on Count One.

D.

Finally, De Jesus-Batres and Jose raised Booker issues for the first time in supplemental briefs to this court. United States v. Booker, 125 S.Ct. 728, 160 L.Ed.2d 621 (2005). Jose argues first that the district court enhanced his sentence based on the number of illegal aliens he harbored and for firearm possession. This argument is belied by the record, which demonstrates that his sentence was not enhanced based on these factors. Jose's sentence was enhanced, however, for demanding money for the release of the hostages. This fact, however, was necessarily found by the jury in their guilty verdict on Count Three. Accordingly, no extra-verdict

15

enhancements were applied in determining the defendant's sentence.  Because no extra-verdict facts were used to enhance Jose's sentence, no <u>Booker</u> Sixth Amendment violation occurred in this case.  <u>U.S. v. Mares</u>, No. 03-21035, slip op. at 1673 (5th Cir. March 4, 2005);  <u>U.S. v. Shelton</u>, 2005 WL 435120 (11th Cir. 2005).

DeJesus-Batres argues that the district court erred in imposing her sentence under an unconstitutional mandatory Guidelines sentence regime.  We must determine therefore whether under <u>Booker</u> there is error in defendant's sentence because the district court considered and applied the Guidelines as binding.

In <u>Booker</u>, the Supreme Court excised 18 U.S.C. § 3553(b)(1), which made the Guidelines result binding on the sentencing court and § 3742(e) requiring *de novo* review of sentences on appeal.  <u>Booker</u>, 125 S.Ct. at 764. The Court concluded that with these two sections excised, the "remainder of the Act satisfies the Court's constitutional requirements."  <u>Id</u>. at 769. The Court further made it clear that its remedial holding applies to cases on direct review: "We must apply today's holdings–-both the 6th Amendment holding and our remedial interpretation of the Sentencing Act–-to all cases on direct review."  <u>Id</u>.

Because the Supreme Court excised the sections of the Guidelines rendering them mandatory, it was <u>Booker</u> error for the district court to sentence De Jesus-Batres under a mandatory Guidelines scheme.  <u>United States v. Shelton</u>, 2005 WL 435120 (11th Cir. 2005); <u>United States v. Labastida-Segura</u>, 396 F.3d 1140 (10th Cir. 2005). Thus, as a result of <u>Booker</u>'s remedial holding, a sentencing court commits <u>Booker</u> error when the court misapplies the Guidelines by considering them binding rather than advisory.  <u>Id</u>.

Although we are persuaded that the district court committed <u>Booker</u> error, none of the

16

defendants objected on this basis in the district court and our review is only for plain error. As the Supreme Court in <u>Booker</u> stated: "Nor do we believe that every appeal will lead to a new sentencing hearing. That is because we expect reviewing courts to apply ordinary and prudential doctrines, determining for example, whether the issue was raised below and whether it fails the 'plain error' test." <u>Booker</u>, 125 S.Ct. at 769, <u>Mares</u>, slip op. at 1676. As we stated in <u>Mares</u>, "An appellate court may not correct an error the defendant failed to raise in the district court unless there is '(1) error, (2) that is plain, and (3) that affects substantial rights.' <u>Cotton</u>, 535 U.S. at 631, 'If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" <u>Mares</u>, slip op. at 1676.

The first two prongs of the plain error test are easily met. As demonstrated above, the district court erred in imposing a sentence under Guidelines it considered binding rather than advisory. Since the Supreme Court's decision in <u>Booker</u>, this error is also plain in the sense that it is clear or obvious. <u>Olano</u>, 507 U.S. 725, 734 (1993). The Supreme Court made it clear in <u>Johnson v. United States</u>, that an error is plain even though an objection at trial was not warranted under existing law but a superceding decision before appeal reverses that well-settled law. 520 U.S. 461, 468 (1997). It is enough that the law was settled at the time of appellate consideration to make the error "plain". <u>Id</u>.

Under the third prong of the plain error test, De Jesus Batres must demonstrate that the plain error "affects his substantial rights." The defendant bears the burden of establishing this prong of the plain error test. <u>Olano</u>, 507 U.S. at 734; <u>Mares</u>, slip op. at 1677. A defendant sentenced before the court announced <u>Booker</u> faces a difficult challenge in establishing that the

sentencing court's use of a mandatory rather than an advisory Guidelines scheme actually affected the outcome of the proceedings. To carry this burden, the defendant must ordinarily point to statements in the record by the sentencing judge demonstrating a likelihood that the judge, sentencing under an advisory scheme rather than a mandatory one, would have reached a significantly different result. Mares, slip op. at 1677. De Jesus-Batres points to no passage in the record indicating that the sentencing judge would have arrived at a different sentence had the Guidelines been advisory. We have independently reviewed the record of the sentencing proceedings and find no such reference. Because there is no indication in the record from the sentencing judge's remarks or otherwise that the sentencing judge would have reached a different result under an advisory Guidelines scheme, DeJesus-Batres has failed to carry her burden of satisfying the third prong of the plain error test and is entitled to no relief on this claim.[3]

## VIII.

Based on the foregoing, we AFFIRM the defendants' convictions, MODIFY the defendants' sentences to reflect a five year term of imprisonment and a three year term of supervised release on Count One, and otherwise AFFIRM the defendant's sentences as modified.

---

[3]To the extent any of the defendants have adopted Booker arguments raised by De Jesus-Batres, the same result would apply based on our review of sentencing proceedings for all defendants.