IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 5, 2007

Charles R. Fulbruge III
Clerk

No. 06-51673

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

ELIZABETH RAMIREZ

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
(06-CR-2130-PRM)

Before DAVIS, WIENER, and PRADO, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Elizabeth Ramirez was convicted of harboring illegal aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (a)(1)(B)(ii). She appeals her conviction, contending that there was insufficient evidence to support the jury's verdict. We AFFIRM.

I. FACTS AND PROCEEDINGS

Ramirez had been previously convicted of a drug offense and sentenced to home confinement. As a condition of her probation, she was required to wear a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

radio transmitter monitor. On May 26, 2006, Probation Officers Hector Aguirre and Josefina Lazalde arrived at Ramirez's residence to conduct an unannounced inspection of the monitor.

When the officers knocked on the door and Ramirez opened it, she seemed particularly surprised to see them. After they entered and requested access to the bedroom where the transmitter was located, Ramirez closed the bedroom door, saying there were feminine items inside. Ramirez continued to deny the officers access to the room even after Officer Lazalde, a woman, offered to conduct the inspection out of Officer Aguirre's presence. Officer Aguirre became suspicious, left via the front door, and circled around the house, where he encountered a man trying to leave through a rear window. The officers ultimately discovered five more men hiding inside the home. The officers called Border Patrol Agent Delfina Cruz for assistance, and she determined that the men were in the United States illegally. The six men had entered the country about a month prior to their discovery. Following their illegal entry, they had spent approximately 15 days at various locations. They were then driven to Ramirez's home in the middle of the night, where they had been staying for approximately seven to ten days.

Ramirez was questioned while the men were taken into custody, at which time she insisted that they were not illegals. She also maintained that they were friends who had merely stayed over after a party the preceding night.

Ramirez was questioned again that evening when Agent Rafael Martinez from Immigration and Customs Enforcement returned to the residence to arrest her. She repeated her story to Agent Martinez, claiming that the men had been at her home for a party and had decided to spend the night after having too much to drink. A friend of Ramirez stopped by while Agent Martinez was there. Ramirez asked the friend to corroborate Ramirez's story, but the friend was unaware of any party the preceding night.

Following her arrest, Ramirez was questioned yet again. At this time, she stated that she had met the men at some horse races, that they had been at her house for a party, and that she did not initially realize that they had stayed over for the night. She also remarked that the men had been coming to her residence off and on for about a month. Ramirez also offered multiple reasons for having denied the probation officers entry into the bedroom. She explained that (1) it was because the men were in their underwear, (2) she did not want the officers to see her feminine objects, and, finally, (3) the men were drinking in her house, and she feared that might be a violation of her probation.

While being fingerprinted, Ramirez changed her story entirely, stating that her roommate, a man named Ramiro, had brought the men to her residence and left them there. Ramirez was unable to provide Ramiro's last name, his phone number, or any other contact information. Agent Martinez was unable to find anyone who could confirm Ramiro's identity, and Ramirez's landlord had never approved occupancy by Ramiro or even heard of a roommate of that name.

Ramirez was charged with harboring illegal aliens and tried by a jury. During the trial, she moved for a judgment of acquittal, which was denied. Ramirez was convicted, sentenced to 21 months of imprisonment, and ordered to serve a three-year term of supervised release and to pay $100 in mandatory assessments. She timely filed a notice of appeal.

## II. ANALYSIS

### A.   Standard of Review

In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the essential elements of the offense

were established beyond a reasonable doubt.[1] We consider all evidence, whether circumstantial or direct, including all reasonable inferences.[2]

B.     Sufficiency of the Evidence

To convict Ramirez of harboring illegal aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (a)(1)(B)(ii), the jury had to find beyond a reasonable doubt that (1) the aliens entered or remained in the United States in violation of the law, (2) Ramirez concealed, harbored or sheltered the aliens in the United States, (3) Ramirez knew or recklessly disregarded that the aliens entered or remained in the United States in violation of the law, and (4) Ramirez's conduct tended to substantially facilitate the aliens' remaining in the United States in violation of the law.[3]

Ramirez concedes the illegal status of the men found in her house; however, she insists that the government failed to present evidence sufficient to prove the other elements of the offense. She asserts that she merely shared living quarters with the men, and she denies providing them with other necessities or attempting to conceal their presence. She also disputes having any knowledge of the men's illegal status, and contends that there was no reason she should have even suspected that they were undocumented.

We reject Ramirez's contentions, finding ample record evidence to the contrary. Evidence that the jury could credit and reasonable inferences from it demonstrate that Ramirez harbored, sheltered, and attempted to conceal the men's presence. The men had been staying at Ramirez's home between seven and ten days prior to their discovery. During their stay, Ramirez provided them with food, places to sleep, and the use of her telephone, laundry facilities,

---

[1] United States v. De Jesus-Batres, 410 F.3d 154, 160 (5th Cir. 2005).

[2] United States v. Rajwani, 476 F.3d 243, 247 (5th Cir. 2007).

[3] 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (a)(1)(B)(ii); De Jesus-Batres, 410 F.3d at 160.

shower, and television. When the probation officers arrived at her residence, Ramirez attempted to conceal the men's presence by barring the officers from the bedroom in which they were hiding. Such evidence sufficiently proves that Ramirez concealed, harbored, or sheltered the six aliens.

Moreover, Ramirez's conduct substantially facilitated the aliens' remaining in the United States in violation of the law. To "substantially facilitate" means to make an alien's illegal presence in the United States significantly "easier or less difficult."[4] Considering that Ramirez assisted the men by providing shelter, food, and other necessities, and that she attempted to prevent their being discovered by the probation officers, a rational trier of fact could have found that she made it significantly easier for the aliens to remain in the United States illegally.

Finally, we conclude that the government introduced evidence sufficient to prove that Ramirez knew or recklessly disregarded the fact that the men were illegal aliens. Circumstantial evidence alone can establish a defendant's knowledge or reckless disregard that the persons harbored are illegally in this country.[5] Based on Ramirez's inconsistent behavior, contradictory reasons offered, and the suspicious circumstances surrounding the men's presence in her home, a reasonable jury could have inferred that she was aware of the men's undocumented status. Ramirez gave conflicting accounts of how the six men came to be staying at her residence and why she had barred the probation officers from entering the bedroom. The jury could also have reasonably construed Ramirez's efforts to prevent the officers from entering the bedroom as an attempt to warn the men of the presence of immigration officials. We have previously held that such a warning provides significant circumstantial evidence

---

[4] United States v. Shum, No. 06-11002, 2007 WL 2285223, at *1 (5th Cir. 2007).

[5] De Jesus-Batres, 410 F.3d at 161 (citing United States v. Rubio-Gonzalez, 674 F.2d 1067, 1071 (5th Cir. 1982)).

of one's knowledge of an alien's illegal status.[6]  In sum, considering Ramirez's inconsistent and rather implausible explanations, there was sufficient evidence to show that she knew or recklessly disregarded the illegal status of the men.

### III. CONCLUSION

Given the evidence presented, and the inferences reasonably to be drawn from it, a rational jury could have found that the essential elements of the offense were established beyond a reasonable doubt.  Ramirez's conviction is AFFIRMED.

---

[6] United States v. Rubio-Gonzales, 674 F.2d 1067, 1072 (5th Cir. 1982).