**Nelida Leticia ALFARO–GONZALES,**
**Petitioner,**

v.

**Michael B. MUKASEY, Attorney General of the United States \* Department of Homeland Security, Respondents.**

No. 06–5624–ag.

United States Court of Appeals, Second Circuit.

Dec. 14, 2007.

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as a respondent in this case.

428

Robert C. Ross, West Haven, CT, for Petitioner.

Peter D. Keisler, Ass't Att'y Gen., Civ. Div., U.S. Dep't of Justice, Washington, D.C. (David V. Bernal, Ass't Dir., Off. of Immig. Litig., Anthony C. Payne, Senior Litig. Counsel, Jesse M. Bless, Trial Att'y, Washington, D.C., of counsel), for Respondents.

Present: Honorable AMALYA L. KEARSE, Honorable CHESTER J. STRAUB, and Honorable PETER W. HALL, Circuit Judges.

### SUMMARY ORDER

Petitioner Nelida Leticia Alfaro–Gonzales ("Alfaro"), a native and citizen of Peru who first entered the United States in 1992, petitions for review of the November 13, 2006 decision of the Board of Immigration Appeals ("BIA") affirming the May 20, 2005 decision of Immigration Judge ("IJ") Michael W. Straus, which denied her application for adjustment of status under § 245(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255(i), and her application for cancellation of removal under INA § 240A(b), 8 U.S.C. § 1229b(b). *See In re Nelida Leticia Alfaro–Gonzales,* No. A78 222 886 (B.I.A. Nov. 13, 2006), *aff'g* No. A78–222–886 (Immig. Ct. Hartford, Conn., May 20, 2005) ("IJ Decision"). Alfaro contends that the IJ erred in concluding that she had gained admission to the United States in 1992 "by fraud or willfully misrepresenting a material fact," thus making her "inadmissible" under 8 U.S.C. § 1182(a)(6)(C)(i) and ineligible for adjustment of status. We assume the parties' familiarity with the underlying facts and procedural history of the case. For the reasons that follow, we grant the petition for review.

"Where the BIA adopts the decision of the IJ and merely supplements the IJ's decision, ... we review the decision of the IJ as supplemented by the BIA." *Yan Chen v. Gonzales,* 417 F.3d 268, 271 (2d Cir.2005). Because the BIA in the present matter "adopt[ed] and affirm[ed] the decision of the Immigration Judge" with its own "additions," we review both the BIA and IJ decisions.

We review the IJ's factual findings for "substantial evidence." *Islami v. Gon-*

*zales,* 412 F.3d 391, 396 (2d Cir.2005). The IJ's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). A decision that an alien is inadmissible "is conclusive unless manifestly contrary to law." *Id.* § 1252(b)(4)(C).

An IJ's determination that the testimony of an alien is not credible is a factual finding, and thus is reviewed under the substantial evidence standard. *See, e.g., Mei Chai Ye v. U.S. Dep't of Justice,* 489 F.3d 517, 523 (2d Cir.2007). The fact that the IJ and the BIA have relied primarily on credibility grounds in ruling against the alien does not insulate their decisions from review. *See, e.g., Ramsameachire v. Ashcroft,* 357 F.3d 169, 178 (2d Cir.2004). An "adverse credibility determination may not be based upon speculation." *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 400 (2d Cir.2005). Such a determination must be based on "specific, cogent reasons" that "bear a legitimate nexus" to the finding. *Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003) (internal quotation marks omitted). A finding that is "based on flawed reasoning ... will not satisfy the substantial evidence standard." *Id.* Nor will we uphold an adverse credibility determination on the basis of a finding that the IJ could have made but did not. "[O]ur review [is] confined to the reasoning of the IJ, and we will not search the record independently for a basis to affirm the BIA." *Id.* at 305.

In the present matter, the IJ denied Alfaro's application for an adjustment of status based on an adverse credibility determination. He concluded that Alfaro was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) on the ground that she entered the United States using a passport and visa that were fraudulent. Alfaro concedes that "[i]f the credibility determina-

tion is supported by substantial evidence, then [Alfaro] cannot overcome the ground of inadmissibility." (Alfaro brief in support of petition at 5.) The parties agree, however, that if the finding that Alfaro was inadmissible under § 1182(a)(6)(C)(i) was error, we should grant her petition and remand to the BIA for reconsideration of her eligibility for adjustment of status. (*See* Government brief in opposition to petition at 12 n. 5; Alfaro brief in support of petition at 20.)

An alien is inadmissible under § 1182(a)(6)(C)(i) if, "by fraud or willfully misrepresenting a material fact, [she] seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States." The focus thus must be on the alien's knowledge of the fraud or misrepresentation as of the time she "procured" or "sought to procure" such documentation or, at the latest, as of the time she was "admi[tted]." At her hearing before the IJ, Alfaro testified that at no time before she was admitted into the United States did she have any reason to believe that the passport and visa she used were not valid. (*See* Hearing Transcript, November 5, 2004 ("Tr."), at 30.)

■ The IJ declined to credit this or any of Alfaro's related testimony. The IJ stated that Alfaro "claims that she obtained a passport with her name in it and photograph *from an ex-boyfriend* who was in the United States and, according to her, knew the process. She states that she gave him her photograph, fingerprints, and some personal information." (IJ Decision at 2 (emphases added).) The IJ concluded that he "simply [did] not find it credible that she just gets a passport *from a friend of hers* as well as a United States visa." (IJ Decision at 8 (emphasis added).) There was no evidence, however, that Alfaro received her passport "from a friend." The government presented no such evi-

dence, and Alfaro testified that she obtained her passport and visa from an "agency" to which her friend had directed her:

> Q. .... Can you tell me, how did you get the passport?
>
> A. I went to an agency through a friend who was living here in the United States.

(Tr. 30.) Alfaro testified that she was living in Lima, Peru, at the time; that the friend was her ex-boyfriend "Eulysis (phonetic sp.)" (Tr. 32); and that since Eulysis had already come to the United States, he "knew the process," and she consulted him on how to get her passport and visa (Tr. 30).

> Q. So ... what was the process to get the passport and visa?
>
> A. He just told me to go to the agency. They took some pictures and he told me not to worry that he would be responsible for taking care of the rest.

(Tr. 30; *see also* Tr. 35 ("They took my fingerprints and my personal information.").) Alfaro testified she was not charged a fee when she picked up the documents from the agency (*see* Tr. 42), and she thought that when Eulysis said he would be responsible for taking care of the rest, he meant he would take care of the agency's fee (*see* Tr. 42–43; Tr. 43 ("he said he was going to pay the agency")).

There being no evidence that Alfaro received her passport and visa from her friend, rather than from an agency, the principal basis for the IJ's finding that Alfaro's testimony was not credible cannot be sustained.

■ Further, although Alfaro had conceded earlier in the proceedings that the passport and visa she received were in fact fraudulent, we do not see substantial evidence in the record to support the IJ's finding that Alfaro was aware of their

fraudulence at the time she procured them, or sought to procure them, or was admitted into the United States. Alfaro testified that the passport contained "[a]ll [her] personal information," her "picture, everything" (Tr. 31) and that she did not know there was anything untoward about her documents until after she was in the United States (*see* Tr. 32). She testified that she became suspicious when Eulysis told her that she must pay $6,000 and that she must return the passport to Peru. By that time, however, she had already been in the United States for 1–2 weeks. (*See* Tr. 38–39, 43.) The government attorney on cross-examination pressed Alfaro to say that she knew from the outset that her documents were fraudulent, but she denied it:

> Q. So ... you thought something was wrong when you took that passport into your own hands; right?
>
> A. No, when I was here.

(Tr. 35.) The government attorney tried, but failed, to get her to say that she knew while she was still in Peru (a) that she would have to pay $6,000, and (b) that she would have to return the passport after she arrived in the United States:

> Q. You, you didn't think that was wrong that you had to pay $6,000 for that?
>
> A. Well, because I never knew in Peru. I found out when I was here, when I was here.
>
> Q. Okay. So, when did you first think it was wrong what you did?
>
> A. When he asked me for the passport to return it.
>
> Q. And when did he ask you to do that?
>
> A. *When I was about two weeks here.*
>
> Q. When you were about to leave Peru?
>
> A. I don't understand.

> Q. Well, he said that—when did he tell you to return the passport?
>
> A. *When I came here, I was here for two weeks,* truthfully, when I came here.

(Tr. 38–39 (emphases added).)

The IJ discredited Alfaro's testimony that she did not find out until 1–2 weeks after she arrived in the United States that she would have to pay $6,000 for the documents; but the only explanation he gave for that credibility determination was that "$6,000 is not a normal fee to get a passport and a visa." (IJ Decision at 8.) It is true that an unusually high price is often an indication that something is wrong; but to the extent that the IJ's finding that Alfaro was aware of the fraudulent nature of her documents before she was admitted into the United States was based on the size of the demand, his reasoning was flawed because the mere size of a demand does not reveal its timing. For example, it is not uncommon for aliens who are smuggled into this country to have unanticipated sums exacted from them after they have entered the United States. *See, e.g., Pham v. United States,* 317 F.3d 178, 180 (2d Cir.2003) (§ 2255 petitioner and others had "smuggled undocumented Chinese immigrants into the United States and then held them hostage while *demanding additional payments* from the immigrants' families" (emphasis added)); *United ed States v. De Jesus–Batres,* 410 F.3d 154, 157 (5th Cir.2005) (aliens agreed to pay certain fees to be smuggled into the United States, but after they entered the United States, the smugglers demanded higher fees and held the aliens hostage until the higher fees were paid by the aliens' relatives). The fact that $6,000 was an abnormally high fee did not make Alfaro's testimony she was not aware of that fee until after she was admitted into the United States inherently implausible.

The IJ also stated that he "simply d[id] not find [Alfaro] credible that she was totally ignorant about the process to get passports and visas," stating that Alfaro "was educated in Peru. She had twelve years of education." (IJ Decision at 7–8.) However, the IJ cited no support for his apparent premise that some knowledge of the process by which one obtains a passport and a visa would be possessed by anyone graduating from high school in Peru. His refusal to credit Alfaro's testimony on this premise must be regarded as speculative and thus impermissible.

In sum, in light of the facts (a) that there was no evidence to support the IJ's principal finding that Alfaro obtained her passport and visa from her ex-boyfriend, rather than, as she consistently testified, from an agency, (b) that the IJ's finding that Alfaro had knowledge as to how to obtain legitimate documents was based solely on the speculation that any Peruvian high-school graduate would have such knowledge, and (c) that in finding that Alfaro was aware of the fraudulence of her documents prior to her admission to the United States, the IJ relied on a fact that had no legitimate nexus to the timing of Alfaro's awareness, we conclude that the IJ's decision, and the BIA's decision adopting and affirming the IJ's decision, were manifestly contrary to law. Accordingly, the petition for review is granted, and the matter is remanded for further proceedings.