# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 23, 2012

No. 11-30868

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

HAROUT ANSOURIAN,

Defendant - Appellant.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC 3:09-CR-152-2

Before WIENER, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Harout Ansourian appeals the district court's denial of his motion to suppress. Because the district court did not err in finding that Ansourian's consent to the search was an independent act of free will, we AFFIRM.

I.

While patrolling the interstate after midnight, Officer Jarod Averette noticed a pickup truck towing a car on a trailer that was drifting repeatedly into the adjacent lane. Officer Averette initiated a traffic stop. A video camera inside

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the patrol car and a microphone attached to Officer Averette's clothing recorded the encounter.

Officer Averette asked the driver, Harout Ansourian, to step out and accompany him to the front of the patrol car. The officer questioned Ansourian about his travels, his passenger, Gayk Eskichyan, and the ownership of the truck, car, and trailer. Ansourian responded that he was driving his truck from California to Florida, that he borrowed the trailer from a friend, and that Eskichyan owned the car. Officer Averette then approached Eskichyan who had remained in the truck and asked similar questions. Eskichyan's answers corroborated those of Ansourian. Officer Averette told both men to "hang tight" for a few minutes while he checked their drivers' licenses.

Back in his patrol car, Officer Averette turned the camera's audio off, called for backup, and ran a computer check. During the suppression hearing, Officer Averette testified that he told the officers to come to his location and that he "had a vehicle [he] wanted to search." The computer check showed that Ansourian had a prior arrest for first degree murder, Eskichyan had a prior arrest for carrying a loaded firearm, and both men had been arrested less than a month earlier for fraud.

Approximately thirteen minutes after Officer Averette entered his patrol car, he turned the audio back on, exited the vehicle, and asked Ansourian for the paperwork on the car being towed. Ansourian provided the registration certificate for the pickup and stated that he could get the car's documentation. Officer Averette continued to question Ansourian while examining the pickup's registration. Officer Gerardo Almendares arrived and talked with Ansourian while Officer Averette approached Eskichyan to ask about the car's paperwork. Eskichyan explained that it would be difficult to retrieve the paperwork because the car doors were blocked by the trailer's fenders.

Seven minutes after leaving his patrol car, Officer Averette walked back to Ansourian, returned his license and paperwork, advised him that he was not going to be ticketed for the traffic violation, and said, "You're free to go." Ten seconds later, Officer Averette asked Ansourian for consent to search Ansourian's "stuff." Ansourian immediately responded, "You're more than welcome to," but told Officer Averette that he and Eskichyan had already spent three days on the road and were "really in a hurry." Officer Averette assured Ansourian that the search "wouldn't take very long." Ansourian asked the officer what he was looking for, and Officer Averette responded that he was looking for "anything illegal." Officer Averette then asked again, "Do you mind if I search your vehicle?" Ansourian answered, "I don't mind."

The officers began to search the vehicles. During the search, Ansourian approached the officers and offered to remove the trailer's fenders in order to allow the officers to gain access to the car. He did not attempt to stop the search or complain about the length of the search. The police recovered $1,300 in cash, several gift cards, and plastic cards which appeared to be counterfeit hidden in the truck's headliner. Inside the car's trunk, the police found several apparently counterfeit credit cards, handwritten lists of four-digit personal identification numbers, small pinhole cameras, credit card readers, and numerous electronic storage devices.

The officers immediately arrested Ansourian and Eskichyan. A federal grand jury subsequently indicted both men, charging them with possessing device-making equipment in violation of 18 U.S.C. § 1029(a)(4), and possessing 15 or more counterfeit access devices in violation of § 1029(a)(3).

Ansourian filed a motion to suppress the evidence seized during the traffic stop, arguing that he was illegally detained after the computer check was completed. After a two-day evidentiary hearing, the district court denied the

motion with a thorough ruling spanning twenty-six pages.  The district court determined that the prolonged detention by Officer Averette was a violation of the Fourth Amendment because the officer lacked reasonable suspicion of additional criminal activity warranting further investigation.  However, the district court concluded that the defendant voluntarily consented to the search and his consent was an independent act of his free will that was sufficient to dissipate any taint of the unlawful detention.

Ansourian pleaded guilty to the second count in the indictment, specifically reserving his right to appeal the district court's order denying his motion to suppress.  The district court sentenced Ansourian to forty-six months imprisonment, and Ansourian timely filed a notice of appeal.

## II.

When reviewing a district court's denial of a motion to suppress, this court reviews factual findings for clear error and legal conclusions *de novo*.  *United States v. De Jesus-Batres*, 410 F.3d 154, 158 (5th Cir. 2005).  "Where a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses."  *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005).

The only issue on appeal is whether Ansourian's consent was an independent act of free will.  Neither party challenges the district court's conclusion that extending the traffic stop after the license check was completed was unconstitutional.  *See United States v. Jenson*, 462 F.3d 399, 404–06 (5th Cir. 2006).  However, consent to a search may remedy the taint of a constitutional violation if the consent was both voluntary and an independent act of free will.  *United States v. Chavez-Villarreal*, 3 F.3d 124, 127–28 (5th Cir. 1993).  Ansourian admits that his consent to the search was voluntarily given,

4

but he challenges the district court's finding that it was an independent act of free will. "Even though voluntarily given, consent does not remove the taint of an illegal detention if it is the product of that detention and not an independent act of free will." *Id.* This prong focuses on the causal connection between the consent and the unconstitutional detention. *Id.* at 127.

We consider three factors to determine whether the consent was an independent act of free will: "(1) the temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct." *Jenson*, 462 F.3d at 407 (citations omitted).

The first factor weighs in favor of Ansourian. Officer Averette asked for Ansourian's consent just ten seconds after telling Ansourian that he was free to leave and returning his paperwork. Thus, the district court properly concluded that "the first factor supports a finding that defendant's consent was not an independent act of free will."

The second factor of intervening circumstances indicates the consent was an independent act of free will. Prior to asking for consent, Officer Averette communicated to Ansourian that "You're free to go." At this point, Officer Averette also returned Ansourian's license and registration. We have previously identified both of these facts as intervening circumstances. *See Jenson*, 462 F.3d at 407 (holding that the second factor cut against the government because "there is no evidence that (a) [the defendant] knew he was free to leave or (b) that his license had been returned to him, both of which might be viewed as intervening circumstances"). The knowledge that one is free to leave, accompanied by the return of the license and registration, cuts the causal chain between the unconstitutional detention and the consent. *Cf. United States v. Sanchez-Pena*, 336 F.3d 431, 443 (5th Cir. 2003) (noting that after the driver receives the

license, registration, and any other material needed to leave then the encounter after a traffic stop becomes a consensual one). Both of these intervening circumstances distinguish the case at hand from our prior decision in *United States v. Macias*, 658 F.3d 509 (5th Cir. 2011). In *Macias*, this court held that the second factor weighed against the government because there were "no circumstances that intervened between the detention and the consent, and thus . . . there [was] no reason to think that [the defendant] believed he was free to go." 658 F.3d at 524 (internal quotations omitted).

Finally, although there is some support for both sides, the third factor of flagrancy and purpose of police misconduct leans in favor of the government. On the one hand, Officer Averette said that he wanted to search a vehicle when he radioed for backup, and we have held that if the clear purpose of the detention was to obtain consent to search the vehicles, then that factor weighs against the government. *United States v. Jones*, 234 F.3d 234, 243 (5th Cir. 2000). However, following an evidentiary hearing, the district court found that the unlawful detention spanned only seven minutes, and the officers did not purposefully use that period of illegal detention to procure the defendant's consent to search the vehicles. In addition, the video clearly shows that the consent was not obtained by any misrepresentations made to the defendants as Officer Averette told Ansourian that he was looking for "anything illegal." Moreover, once the search began, Ansourian never tried to stop it, revoke his consent, or complain about the length of the search. To the contrary, Ansourian offered to remove the trailer fenders to allow the officers to access the car.

We conclude that the district court's determination that Ansourian's consent was voluntary and an independent act of free will was not error. Therefore, Ansourian's consent was valid and remedies the taint from the prior unconstitutional detention. AFFIRMED. *See United States v. Bessolo*, 269 F.

App'x 413 (5th Cir. 2008) (per curiam) (unpublished) (holding that the district court did not err in denying the motion to suppress because of the valid consent).